[No. 2975.   April 30, 1926.]

## WHITE et al. v. MAYO et al.

[246 Pac. 910.]

### SYLLABUS BY THE COURT

1. Under Code 1915, § 4137, when a complaint is adjudged on demurrer not to state a cause of action, is thereafter amended, and the amended complaint stricken and the cause dismissed, it will be assumed that the amended complaint was also adjudged not to state a cause of action; and appellant, not having excepted to the action of the trial court in dismissing the cause without giving further opportunity to amend, and not having tendered another pleading, will not be heard to object on procedural grounds, but will be deemed to have elected to stand on the sufficiency of his amended complaint.

2. In suit to establish trust, objected that the complaint does not allege facts sufficient to constitute widow trustee for children of title to homestead patented to her after death of the husband and father, the entryman. That objection ineffectual where complaint sets forth sale of the homestead and recognition by widow of the children's interest in the proceeds.

3. Code 1915, § 5893, does not authorize the widow of appropriate the husband's estate for maintenance of family without an allowance by the court.

4. Where one receives from his wife funds of the estate of her deceased husband to purchase the vendee's interest in an executory land contract, which he takes in his own name, his equitable title is chargeable with a resulting trust in favor of the children of the decedent.

---

[1] 3CJ p. 931 n. 71: 4CJ p. 744 n. 64. [2] 39Cyc p. 620 n. 47. [3] 24CJ p. 263 n. 33. [4, 5] 39Cyc p. 104 n. 8; p. 105 n. 17; p. 112 n. 55; p. 148 n. 82; p. 153 n. 13; p. 169 n. 11. [6] 39Cyc p. 605 n. 50. [7] 39Cyc p. 628 n .97 New. [8] 29CJ p. 874 n. 53: 32Cyc p. 1083 n. 99

5. One holding an equitable title to real estate in trust under circumstances stated in preceding paragraph, who receives funds of said children in trust and with them completes payments on the contract and obtains legal title in his own name, holds the legal title charged with a resulting trust for the children.

6. Laches is not a defense in a suit to establish and enforce a resulting trust, where the trustee has constantly acknowledged the rights of his cestuis.

7. In suit to establish trust, original complaint, filed during life of alleged trustee, makes no claim of trust; such claim first appearing in amended complaint, filed after death of alleged trustee. Whatever bearing this may have on question of good faith, it is immaterial in passing on sufficiency of the amended complaint.

8. Where fiduciary funds are traced to a homestead, giving rise to a resulting trust, U. S. Rev. St. § 2296 (U. S. Comp. St. § 4551), exempting homesteads from liability for satisfaction of debts contracted prior to patent, is inapplicable.

Appeal from District Court, Colfax County; Leib, Judge.

Suit by Marion White and another against William H. Mayo and others for an injunction and for an accounting. From a judgment dismissing the cause with prejudice, plaintiffs appeal. Reversed and remanded with direction.

J. Leahy, of Raton, for appellants.

L. S. Wilson, of Raton, for appellees.

### OPINION OF THE COURT

WATSON, J. Appellants commenced suit in the district court of Colfax County May 28, 1922, alleging that they were son and daughter, respectively, of Kosiah L. Mayo, who died January 19, 1922, and that they, together with William H. Mayo, husband of said Kosiah L. Mayo, were her only heirs at law; that Kosiah L. Mayo was the owner of an undivided one-half interest in certain lands which she and her husband, William H. Mayo, had homesteaded, and to which patent issued during their marriage; that during the marriage William H. Mayo and Kosiah L. Mayo had acquired lands in San Juan county in the name of William H. Mayo;

that at the time of the marriage Kosiah L. Mayo was the owner of 160 acres of land in Colfax county, which she thereafter sold, and the proceeds of which were invested in the lands aforesaid; that after the death of Kosiah L. Mayo, William H. Mayo had conveyed the homestead to Lewis C. Griggs, and was about to dispose of the lands. The prayer was for an injunction to restrain the defendants William H. Mayo and Lewis C. Griggs from selling or incumbering the lands, for an accounting of the moneys invested in said lands by said Kosiah L. Mayo, and that the court decree plaintiffs the amount and extent of their interests in all of said lands.

August 1, 1922, there was interposed on behalf of the then defendant, William H. Mayo, a motion to make the complaint more definite and certain, which motion was sustained February 5, 1923.

March 7, 1923, a first amended complaint was filed, in which John E. Mayo and Lillie J. Clement, son and daughter, respectively, of William H. Mayo, were substituted as parties defendant for said William H. Mayo; it being alleged that the latter died December 28, 1922. By this complaint it was alleged that appellants' father, Henry C. White, died about 1893 or 1894, leaving as his only heirs Kosiah L. White, his widow (afterwards Kosiah L. Mayo), appellant Marion White, son, born February 24, 1886, and appellant Lillie George, daughter, born April 17, 1875; that at the time of his death Henry C. White was the owner of 160 acres of land which he had homesteaded, but to which patent had not issued, and that after his death, by some error unknown to plaintiffs, patent therefor was issued in the name of his said widow, but that by the laws of descent and distribution of this territory at that time, said real estate descended, one-half to said widow, and one-half to the appellants. It was also alleged that said Henry C. White left a personal estate which, reduced by unknown sums used for maintenance of the family, was of the value of from $300 to $500, when she married William H. Mayo, in 1895; that no administration pro-

ceedings were ever had, and that the widow took charge and possession of all of said property, and that on November 26, 1896, she had in her hands $500, consisting of the proceeds of the personal property left by Henry C. White and rentals received from said real estate, which sum she turned over to said William H. Mayo for the purpose of purchasing the vendee's interest in an executory land contract; that William H. Mayo, having taken an assignment of the contract, surrendered it and took a new one in his own name; that in December, 1898, Kosiah L. Mayo and William H. Mayo, her husband, joined by appellants (Marion White being then an infant), made a conveyance of the Henry C. White homestead, then standing in the name of Kosiah L. White (Mayo), receiving $500 therefor; that William H. Mayo used most of this sum to complete the payments on his contract, whereby the legal title in the land passed to him; that the balance of the proceeds of the sale of the homestead was used in the purchase of twenty acres of land, title to which was taken in the name of Kosiah L. Mayo; that these two parcels of land were sold for $1,000; that this sum, or most of it, was invested in two other parcels of land, titles to which were taken in the name of William H. Mayo, and which were sold in July, 1909, for $3,600; that of this sum $1,600 was invested in land in San Juan county, title to which remained in William H. Mayo at the time of the death of Kosiah L. Mayo, and which thereafter William H. Mayo conveyed to appellee John E. Mayo, his son, for a consideration of one dollar, and $1,500 was loaned to G. T. George, most of the principal of which was still owing at the date of the death of Kosiah L. Mayo, and which thereafter William H. Mayo transferred and assigned to appellee Lillie J. Clement after the death of Kosiah L. Mayo; that the homestead aforesaid was, after the death of Kosiah L. Mayo, deeded to appellee Lewis C. Griggs, with knowledge on the part of Griggs of some of the facts aforesaid.

The first amended complaint further alleged that at divers times said William H. Mayo and Kosiah L. Mayo

acting jointly and severally, orally promised and agreed to and with appellants fully to account to them, and to each of them, for the said trust fund, and that upon the death of Kosiah L. Mayo, and by virtue of ·'cction 1840 of the Code of 1915, the trust fund inured in its entirety to appellants, who, · prior to her said death, were the sole owners of one-half thereof. It prayed that Lillie J. Clement be held as a trustee as, to the George note and the Hughes indebtedness; that John E. Mayo be held as trustee for the lands conveyed to him; and that Lewis C. Griggs be held as trustee of the lands conveyed to him for such amout of said trust fund as had been invested in and expended on the same.

The first amended complaint was made in certain respects more definite and certain, by interlineation, by order of the court, and thereafter, on April 18, 1923, demurrers were filed by appellee Griggs on three specified grounds, and by all of the appellees on 14 specified grounds. The demurrer of all the appellees was generally sustained by order of May 18, 1923, and on June 6, 1923, the second amended complaint was, filed.

The second amended complaint differs from the first amended complaint but slightly. Instead of claiming by inheritance the whole of the mother's interest in the alleged trust fund, it claims three-fourths thereof, under sectons 1840 and 1842 of the Code. It also sets up that after the death of Kosiah L. Mayo, William H. Mayo, for the first time, repudiated the trust. It prays that the several appellees be held as trustees of the title of the respective properties in their names to the extent to which the trust funds were invested therein, less one-fourth of one-half now admitted to have been inherited by William H. Mayo from Kosiah L. Mayo. June 18, 1923, appellees moved to strike the second amended complaint and to dismiss the cause. On December 19, 1923, that motion was sustained "upon the various grounds stated in said motion," and judgment was entered dismissing the cause with prejudice to the plaintiffs (appellants). General exception was taken and allowed, and this appeal was granted.

[**1**] Appellants contend that the court erred in dismissing the cause, and that, if the objections to the second amended complaint as set forth in the motion to strike the same and to dismiss the cause were sustained, they were entitled to an opportunity to amend. The demurrer to the first amended complaint specified 14 grounds, all of which challenge the sufficiency of the complaint to state a cause of action. By sustaining the demurrer the court ruled that the first amended complaint did not state a cause of action. Appellants were thereupon allowed to amend. As seen, the theory of the second amended complaint and the facts therein alleged differ .very slightly from those of the first amended complaint, and this was one of the grounds set up in the motion to strike. Doubtless this was the ground upon which the court sustained the motion to strike and dismiss the second amended complaint. Even if the second amended complaint should have been attacked by demurrer instead of by motion to strike and to dismiss, we cannot see how appellants can gain any advantage therefrom. Their second amended complaint was held insufficient after their first amended complaint had been adjudged insufficient upon demurrer. In such case, section 4137, Code of 1915, provides that the party ruled against shall pay double costs and file a like pleading instanter, or in default thereof "the court shall proceed with the cause in the same manner as if no second pleading had been filed." No exception was taken to the action of the court in dismissing the cause without giving an opportunity to plead further. No further amended complaint was tendered, and we must presume that appellants, at the time, considered that their second amended complaint was adjudged insufficient, in that it failed to state a cause of action, and that they were willing to rest their appeal to this court upon such holding. We consider the judgment of the trial court, in these circumstances, equivalent to dismissal of the cause upon sustaining demurrer and refusal or failure to plead further.

The motion to strike and to dismiss assigned 14

grounds. It was sustained generally. Here considering the judgment as based upon the insufficiency of the second amended complaint to state a cause of action, we do not know upon what theory it was so held. However, as appellees have filed an able brief in support of the judgment, we deem it sufficient to discuss the matters in respect to which the second amended complaint is therein attacked.

[2] Appellees first contend that the second amended complaint shows that there never was any property belonging to appellants which could have been the subject of a trust. As to the Henry C. White homestead, they urge that the complaint does not show a state of facts under which the land would pass under the laws of descent; but rather a case of incomplete compliance with the homestead laws prior to the death of the entryman; so that the land was, after his death, and after continued compliance by the widow, properly deeded to her under U. S. Rev. Stat. § 2291 (U. S. Comp. St. § 4532).

Here we think appellees misconceive the theory of the second amended complaint. At least, they overlook one admissible theory. There was evidently an attempt to plead a state of facts which, in the judgment of the pleader, would have constituted the widow, from the time patent issued to her, trustee of the title for the heirs of her husband. However, we do not think this is the theory on which appellants rely for recovery. At least, another theory is set forth. In paragraph 9 of the second amended complaint they allege that William H. Mayo and Kosiah L. Mayo sold this land, then standing in her name, with the knowledge and consent of appellants, "and the said $500 was taken then and there by the said Kosiah L. Mayo and W. H. Mayo, and the one-half of said $500 belonging to these plaintiffs was then and there intrusted to the said William H. Mayo and Kosiah L. Mayo, and was placed in trust for these plaintiffs to be used for their sole benefit and behoof." From this allegation, and from a consideration of the whole complaint, we conclude that appel-

lants rely for recovery, not upon being able now to establish and enforce a trust in the homestead, which arose because of a fraud or mistake through which the widow acquired title, but upon the theory that all concerned at the time of the sale of the property recognized one-half of the proceeds as being the property of the appellants. However unassailable the widow's title may have been, she had a right to recognize and accede to the claims of appellants. This she could do either by deeding to them their share in the land, or by dividing with them the proceeds of its sale. We think the complaint sufficiently sets forth that she did the latter. Appellants' theory might have been more clearly set forth, but the question here is not one of definiteness and certainty. The allegation above quoted could not be true, as matter of fact, except upon the theory of a voluntary recognition by the widow of her children's equitable interests in the land. Hence the question here raised by appellees, as applied to that part of the alleged trust arising out of the homestead, does not go to the root of the matter.

[3] Pursuing the contention that there was no property of appellants which could have become the subject of the trust appellees urge that, under Code 1915, § 5893, the widow would have been entitled to exhaust the whole of the personal estate, alleged to have produced from $300 to $500, as allowance for maintenance during the six months following the death of the decedent. She would no doubt have been entitled to it "if necessary," but the necessity must have been determined by the probate court. She did not resort to the court. There is nothing in the section cited to authorize the widow to appropriate her husband's estate for maintenance without authority of the court, after determination of necessity. It would seem, therefore, that appellees' point as to the lack of property to constitute a trust is not well taken.

[4, 5] Appellees next urge that the judgment is to be sustained on the ground that the allegations of the second amended complaint state a case of an express

trust in lands attempted to be created by parol, contrary to the statute of frauds. We find no allegations anywhere supporting this contention. True, the alleged trust was not created by any writing. As to that part of the inheritance consisting of personal property, if there was a trust, it was one by operation of law. As to appellants' share of the proceeds from the sale of the homestead, if a trust arose it was originally by agreement. Kosiah L. Mayo and William H. Mayo were intrusted with $250, to be invested for the benefit of appellants. But it is not alleged that it was to be invested in any particular land, or in land at all. It is merely charged that soon after being intrusted with the money for investment, William H. Mayo began making therefrom payments on the land contract which he had with the Maxwell Land Grant Company. If this part of the alleged trust be classified according to its origin, it is not a trust in lands, but in $250 in money. If it be classified according to the later dispositon of it, it is not an express trust, but one arising by operation of law from the act of William H. Mayo in investing appellants' money in lands, and taking title in his own name. We conclude, therefore, that the statute of frauds will not serve to sustain the judgment.

Appellees urge that appellants' claims are stale, and that, by laches, they have lost the right to assert them in a court of equity. They urge that after the alleged trust became established, 26 years elapsed before the death of Kosiah L. Mayo and 27 years elapsed before the commencement of suit. During 15 years of this time, both appellants were sui juris, the younger having reached his majority in 1907. They further urge that when suit was finally commenced, there was no allegation whatever of a trust, but only a claim of a right of inheritance from Kosiah L. Mayo; that it was only after the death of William H. Mayo that they set up any claim to an inheritance from their father, or to a trust arising from the disposition which was made of his estate. They point out that during this delay the two persons whom it is now sought to charge as trustees

have died and are unable to reveal the facts within
their knowledge; that the original trust, the amount of
which is placed at $1,000, is claimed through its invest-
ment and reinvestment by and in the name of William
H. Mayo to have grown, in 1909, to a fund of $3,600;
and that appellants are not now in a position, after the
death of Kosiah L. Mayo and William H. Mayo, to lay
claim to the fruits of their care and labor for many
years. Ordinarily such facts would preclude relief in
a court of equity. Patterson v. Hewitt, 11 N. M. 1, 66
P. 552, 55 L. R. A. 658. See, also, Locke v. Murdoch, 20
N. M. 522, 151 P. 298, L. R. A. 1917B, 267; Algodones
Land & Town Co. v. Frank, 21 N. M. 82, 153 P. 1032.

To avoid the defense of laches, appellants rely on
two allegations of the second amended complaint. In
paragraph 20 it is alleged that—

"The said William H. Mayo and Kosiah L. Mayo, acting
jointly and severally, at divers times during the contin-
uance of said trust, and particularly as late as the month
of July or August, 1920, more definitely. plaintiffs cannot
now say, promised and agreed to and with said plaintiffs
to fully account to them, and to each of them, for the
said trust fund."

In paragraph 23 it is alleged that—

"Said William H. Mayo ever since the creation of the
trust above alleged admitted the same and promised at
all times to account for and pay over to these plaintiffs
their portion thereof, until after the death of the said
Kosiah L. Mayo, and that after her death and on the
28th day of January, 1922, the said William H. Mayo
attempted to repudiate the said trust by stating to said
Marion White that his said mother, Kosiah L. Mayo, spent
the $500 belonging to these plaintiffs and so inherited from
their said father as aforesaid, for medicine, and plaintiffs
allege and say that . at no other time did said William
H. Mayo attempt to evade said trust or to deny the same
but at all other times theretofore, he admitted the same
and promised to account for and pay over to these plain-
tiffs their part thereof."

It was, they contend, a continuing trust, always ad-
mitted, and that until repudiated by William H. Mayo,
after the death of Kosiah L. Mayo, there was no occa-
sion for them to proceed for its enforcement, and that
equity will not charge them with a lack of diligence
for failing to do so.

In Pomeroy's Equity Jurisprudence, at section 1449, it is laid down:

"In case of express continuing trusts, 'so long as the relation of trustee and cestui que trust continues to exist, no length of time will bar the cestui que trust of his rights in the subject of the trust as against the trustee, unless circumstances exist to raise a presumption from lapse of time of an extinguishment of the trust, or unless there has been an open denial or repudiation of the trust brought home to the knowledge of the cestui que trust which requires him to act as upon an asserted adverse title.' But where the repudiation or breach of the trust has been brought home to the actual knowledge of the cestui que trust, the ordinary rule as to laches applies; the same degree of diligence is required of him as in cases of the rescission of a contract for fraud or mistake.

"Constructive and resulting trusts are also governed by the ordinary rules as to laches; but in cases of resulting trust, where the trustee constantly acknowledges the right of the one in whose favor the trust is raised by virtue of his payment of the purchase money, the trust is properly treated as express, so far as the operation of the doctrine of laches is concerned."

See, also, Perry on Trusts and Trustees, § 141; Condit v. Maxwell, 142 Mo. 266, 44 S. W. 467.

The reason for the rule as to express trusts is plain. The rights of the trustee and of the cestui que trust are fixed by agreement. What the trustee does with the property is according to the intention of the parties. His possession is not adverse to, but is constructively the possession of, his cestui que trust. Where the trust arises by operation of law, the above reasons may or may not apply, depending upon the nature of the trust. A resulting trust, like an express trust, depends upon the intention of the parties. The difference is that in the resulting trust the intention is presumed. A constructive trust arises from fraud, actual or constructive. Perry on Trusts and Trustees, §§ 126, 166; Pomeroy's Equity Jurisprudence, § 155.

In Hanson v. Hanson, 78 Neb. 584, 111 N. W. 368, the difference between resulting and constructive trusts is thus stated:

"Implied trusts are of two species, one denominated a 'resulting trust,' and the other a 'constructive trust.' In

the first class are those trusts which attach to a legal estate acquired by consent of the parties, not in violation of any fiduciary duty or trust relation, for the common benefit of both. trustee and cestui que trust.    This trust arises out of, and is declared in favor of, the intent of the parties creating it.    Its inception is in good faith and honest dealing.    The other species of implied trusts, which is called 'constructive trusts,' is one imposed by a court of equity for the purpose of enforcing an equitable right as against the fraudulent intent of the trustee ex maleficio. This latter class of implied trusts have their origin in the bad faith of the trustee, and are imposed by a court of conscience to defeat his wrongful ends.    3 Pomeroy, Equity Jurisprudence (3d Ed.) § 1155.    Where a constructive trust is imposed, the statute begins to run against the cestui que trust at least from the time of the discovery of the wrong, because the trust is held against his interest and without his consent.    But with reference to the former class of trusts, which are created for the benefit of both the trustee and the cestui que trust, the statute of limitations is not put in operation by any act of the trustee in furtherance of his trust, but only by some act which is equivalent to a repudiation of it.    Edwards v. University [21 N. C.] 1 Dev. & Bat. Eq. (N. C.) 325, 30 Am. Dec. 170; O'Toole v. Hurley, 115 Mich. 517 [73 N. W. 805]; Fawcett v. Fawcett, 85 Wis. 332 [55 N. W. 405, 39 Am. St. Rep. 844]; 1 Perry, Trusts (5th Ed.) § 139."

[6] So long as the trustee admits the existence of a resulting trust, his title and possession are not deemed adverse to the cestuis.  They are in accordace with the presumed intention.  Hence no cause of action necessarily arises.  Until the trustee's attitude changes from acknowledgment to repudiation, limitations do not run and diligence is not required.  This seems to be the well-settled doctrine.

Perry, in "Trusts and Trustees," section 127, gives, as an instance of a resulting trust, the case of a widow purchasing an estate in her own name with funds of her deceased husband; the trust resulting to his children.  In the case under consideration, Kosiah L. Mayo is not alleged to have invested appellants' share of the personal property in her own name, but she is alleged to have turned it over to her husband for the purpose of making the purchase, and that he took the property in his name.  It would seem that, on principle, the case would be the same.  A very similar state of facts was held to raise a resulting trust in Pearce v. Dyess, 45

Tex. Civ. App. 406, 101 S. W. 549. As the effect of this
transaction, we find William H. Mayo holding an equit-
able title under an executory contract for the purchase
of land, which equitable title is charged with a result-
ing trust in favor of **appellants** to the extent of an un-
divided one-half interest. Then he and his wife obtained
control of $250, to be by them invested for the benefit
of the appellants. This sum he applied, together with
the $250 of his wife, in completing the payments on
the land and obtaining legal title thereto. This is the
case of a fiduciary purchasing property in his own
name with the fiduciary funds, and gives rise, as Perry
says (section 127), to a resulting trust. By implication
of equity, it was the intention of William H. Mayo to
hold this property in trust for the appellants to the
extent to which their funds were applied to its pur-
chase. Such a trust, continually acknowledged and
admitted, does not, under the rule above set forth, place
upon the cestui que trust any burden of diligence in
pursuing it unless and until repudiated. Appellees cite
many cases in which laches was successfully invoked to
defeat claims of trust, but none where the trust had
been acknowledged.

It seems to be the theory of the second amended com-
plaint that the alleged trust included, not only appel-
lants' own share of the inheritance, but also their
mother's share. As to the latter, the situation, as
made by the complaint, is different. There does not
seem ever to have been any admission by William H.
Mayo of any rights now claimed for Kosiah L. Mayo.
It is not alleged that she was in ignorance of the fact
that the lands in which the investments and reinvest-
ments were made were conveyed to her husband.
Whether, under the present allegations, a trust ever
arose as to her share and whether she had lost, by
laches, before her death, the right to lay claim to an
interest in the property are questions we do not de-
cide, since they are unnecessary to the disposition of
the present appeal, and since the allegations may not

be the same when issue is finally joined in the trial court.

[7] Stress is placed by appellees on the fact that the original complaint filed during the lifetime of William H. Mayo did not proceed upon the trust theory, but upon that of inheritance of the separate estate of Kosiah L. Mayo, and that the theory of resulting trust, at all times admitted, but finally repudiated, was not brought into the case until after his death. Whatever bearing such fact might have in considering the honesty and good faith of the parties and in determining where the truth lies, it does not seem to bear upon the question whether the second amended complaint states a cause of action.

[8] Appellee Griggs urges one further point in support of the judgment of dismissal as to him. He contends that the land conveyed to him, which was entered by William H. Mayo as a homestead May 19, 1915, and patented October 2, 1920, is exempt from appellants' claims under U. S. R. S. § 2296 (U. S. Comp. St. § 4551), which provided:

"No lands required (acquired) under the provisions of this chapter shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor."

Courts have differed in construing this exemption. In some cases it has received a liberal construction in the interest of the homesteader, giving to the term "debt contracted" the meaning of "liability incurred." Where the provision is so construed, it is held to exempt the land from the owner's liability for tort committed prior to patent. In Brun v. Mann, 151 F. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154, the Circuit Court of Appeals for the Eighth Circuit, in an opinion by Judge Sanborn, noting the two lines of decision, laid down what we conceive to be the correct rule. The difference between a tort committed and a debt contracted is pointed out. Rejecting the contention that the exemption is beneficial to the citizen and so should be liberally construed, the court said:

"There are two reasons why this argument is not convincing. In the first place, while it is a rule inspired by public policy that exemption and homestead laws should have a liberal construction, there is a more imperative rule of public policy which forbids the interpretation appellants seek. It is that laws should be so construed and enforced, where no legal obstacle prevents, as to repress wrong and prevent crime. It has frequently been and is the policy and law of the land that debtors may be discharged from liability for their honest obligations by a surrender of their property. But at the same time the nation refuses to release them from liabilities for their frauds and malicious injuries, even though all their property is surrendered to their creditors. Bankr. Act July 1, 1898, c. 541, section 17, 30 Stat. 550 (3 U. S. Comp. St. 1901, p. 3428). It may be well that Congress was willing to donate the lands of the nation to citizens free from debts which they had promised or consented to pay, but which through misfortune they were unable to discharge, but that ·it was unwilling to offer a reward for wrong and a premium for crime by giving its lands to their perpetrators free from liability for their torts. As the Congress has not done so, no liberal or other rule of construction requires, and public policy forbids, judicial legislation to that effect. In the second place,·it is only when the terms of a statute are ambiguous and their significance is uncertain that the rule of liberal construction has any function. It is the intention expressed in a statute, and that alone to which the courts may lawfully give effect. They may not assume or presume purposes and intentions that the terms of the statute do not indicate and then enact or expunge provisions to accomplish· these supposed intentions. They may not suppose that Congress intended to exempt these lands from every liability incurred when it expressed the intention to exempt them from every debt contracted only, and then substitute the one term for the other for the purpose of expressing the assumed intention. Construction and interpretation have no place or office where the language of the statute is unambiguous and its meaning evident. There is a conclusive presumption that the legislative body intended what it declared, the statute must be held to mean what it clearly expresses, and no room is left for construction. U. S. v. 99 Diamonds, 139 F. 961, 964, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185. In view of the patent distinction between debts by contract and liabilities for wrongs, of the familiar use of the term 'debt contracted' to indicate the former, and the term 'liability incurred' to signify both, of the marked distinction between the two classes of liabilities embodied in the Constitution of the United States and the decisions of the courts, of the public policy of the nation to release debtors from their honest obligations and to refuse to discharge them from their liabilities for frauds and malicious injuries, and of the evident rejection of the expression 'liability incurred' and the selection and adoption of the term 'debt contracted' by the Congress in the acts under consideration, the latter phrase is too clear in expression and too certain in sig-

nificance to permit the substitution for it of the term
'liability incurred' by any rule of construction.    Such a
substitution would be judicial legislation which the courts
are not authorized to enact, and would import into these
acts of Congress an exemption which the Congress did not
insert therein, and which the plain term it used conclu-
sively demonstrates it never intended to enact.    The con-
clusion is that the exemption of lands acquired under the
homestead and timber culture laws from liability for any
'debt contracted' by the patentees does not exempt them
from liabilities for torts previously incurred, and the lands
and water rights involved in this litigation are subject to
sale to satisfy the judgment of Mann.''

Mr. Clark, in the article on ''Exemptions (from
Execution),'' 12 A. & E. Enc. of Law (2d Ed.) 169, ·
says that, by the overwhelming weight of ·authority,
statutes allowing exemption as against judgments on
''any debt'' or on ''any debt contracted'' do not apply
as against torts, but only as against contracts.   In the
article ''Homesteads,'' 29 C. J. 874, decisions both ways
are cited, but no opinion is expressed as to the weight .
of authority.

The transaction of investing trust funds in property,
title to which is taken in the trustee, is in its nature
more allied to tort than contract.   Equity indulges the
presumption that the title is taken with intent to hold
it in trust, but that is a fiction to promote the adminis-
tration of justice.   It does not change the nature of
the act.   The reason given in the foregoing quotation
from Brun v. Mann would seem to have equal force in
the case at bar.

In Kimball v. Cunningham Hdw. Co., 201 Ala. 409,
78 So. 787, it was held that one adjudged a trustee for
creditors of sums collected upon insurance policies, and
who by her conduct had become, under the statute,
personally liable, could not claim exemption. The court
said:

''The obligation on her part to pay that sum into registry
of the court, in accordance with the command of the
court, was not a 'debt' or a 'debt contracted' within the
provisions of the statute granting exemptions of property
from levy and sale under legal process.''

Counsel for appellee Griggs cites no authority for

his present contention. Upon the reasons and authority stated, we overrule it.

It follows from the foregoing that there is error in the judgment. It will be reversed, and the cause remanded, with direction to the district court to overrule the motion to strike and to dismiss; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.