22 P.(2d) 848

BROWN et al. v. LIKENS (BOLGER et al., Interveners).

No. 3745.

Supreme Court of New Mexico.

May 31, 1933.

H. C. Palmer, of Farmington, and **J. O.** Seth, of Santa Fé, for appellants.

George F. Bruington and Claude Smith, both of Aztec, for appellees.

WATSON, Chief Justice.

Plaintiffs, claiming as owners of one-half of seven-eighths of all minerals and mineral rights, including natural gas, in and under a certain 80-acre tract, sued defendant for an accounting and damages for a conversion of gas from the premises.

Third parties intervened, denying plaintiffs' asserted title and setting up one of their own. Defendant's lot is cast with the interveners, since he claims under them.

The title of plaintiffs rests on a decree of the district court rendered June 5, 1926, adjudicating them the owners of the mineral right in question. In this suit, however, Charles E. McHugh was the sole defendant.

The title asserted by the interveners rests upon a warranty deed, dated January 8, 1926, by which said McHugh conveyed the land to intervener Elizabeth A. Bolger, then Lenihan. But McHugh was married and his wife did not join in this deed. For that reason the trial court held, and it is not here questioned, that if the beneficial title was in McHugh, the deed was void.

Appellees advanced, and the trial court adopted, the theory that McHugh's title was not beneficial, but was a resulting trust for the interveners. On this theory alone judgment went against the plaintiffs, and they have appealed.

On this question of trust much evidence was received. It is highly conflicting. As usual in such cases, we are on the one hand reminded of the heavy burden of proof resting upon the proponent of a theory of resulting trust, and, on the other hand, reminded of the substantial evidence rule. In this case, however, we are able to reach a decision upon the testimony adduced on behalf of the appellees, without balancing it against the evidence to the contrary.

Unfortunately, we are compelled to arrive at the ultimate facts by reviewing the record; the trial court having failed to make findings supporting its conclusions that intervener Bolger paid a valuable consideration for the conveyance to her, and that McHugh's title was in trust.

We may say at once that, aside from the evidence now to be examined, on which interveners rely to establish the trust, there is no proof or contention that intervener Bolger paid a consideration for the conveyance to her.

All agree that Sarah B. Miller owned the property prior to May 16, 1925. On that date she executed a quitclaim deed to McHugh, reciting a consideration of $1, and reserving an undivided one-eighth interest in oil and gas. On January 18, 1926, as above stated, McHugh conveyed to Bolger, reciting a consideration of $100. Finally, on January 8, 1927, Bolger, by her attorney in fact, quitclaimed the land to interveners Fred Sahara and Leo Kelly, as trustees, for $1 and other valuable consideration.

It is the nature of the first transaction that here concerns us. The two last conveyances are claimed to have merely executed the trust which resulted from the first. The nature of the trust impressed upon the final conveyance is not expressed in the deed, but in the petition in intervention it is thus stated: " * * * For the use and benefit of all the intervenors herein and all others who had from time to time invested moneys for the purchase of the said land by the said C. E. McHugh."

Late in the year 1924, McHugh, a resident of South Dakota, came to San Juan county, with a view to engaging in oil and gas speculation or development. He acquired a number of leases adjoining the Miller property. Upon the latter there was at the time a producing gas well. Having returned to South Dakota, he interested Mrs. Bolger in his projects; stating that he was endeavoring to raise money to acquire the Miller tract, which, as he expressed it, would "take the wild-cat out of" his adjoining leases, and which could be purchased for $2,000. He proposed to Mrs. Bolger that with the money raised he would purchase the Miller tract, which property, as Mrs. Bolger testifies, "was to stand in the name of the investors as security to them against loss in their investment. In addition there was to be acquired leases in the name of C. E. McHugh." Mrs. Bolger became interested herself and thought that she could interest her father and relatives. It was agreed that she should go to Chicago for the purpose, and that the expense of the trip, $250, should be treated as an investment by her. She did go to Chicago and succeeded in interesting her father and others.

Some weeks later, McHugh left for Chicago for the purpose of reaping the harvest which Mrs. Bolger had already sown. On his departure, Mrs. Bolger gave him $1,000, "which, together with the $250 previously expended on this venture," as she testifies, "was to constitute a part of the purchase price of the

Miller place and which property it was agreed would be purchased in my name as security for my investment and that of my father and others who were lending financial aid."

In Chicago, on May 6th, McHugh met Mrs. Bolger's father, Frank M. Lenihan. The latter, on the next day, gave the former $700, taking a receipt in which it was said that the sum was "to be applied on exploiting the oil leases I own in San Juan County, New Mexico & the profits derived from said leases are to be divided pro rata according to cost of the expenses of developing between myself & Frank Lenihan, Sr."

Lenihan testified: "I asked him how much the place could be bought for—the Miller place—and he said $2,000. I asked him where he came in on this proposition. He said that the fact of the matter was he was up against it in as much as the other leases were about due and he had not been able to produce any money, and he also stated that when he got it going that he would have a well of his own as good or better than the Miller place. The agreement was that this deed was to be placed in my daughter Elizabeth's name as a trust deed for herself and others whom she might interest. * * * We were to share and share alike for any money we put in in the other leases. * * * He was to have nothing to do with that (the Miller ranch). That was the bait he threw out to us and we bit."

These moneys of intervener Bolger and her father are the only investments shown to have been made with McHugh prior to his taking title in his own name on May 16, 1925.

June 15, 1925, McHugh obtained $500 from intervener Sahara, giving a receipt certifying that the latter had "that day invested ($500) five hundred dollars in with me in the Aztec N. Mex. oil and gas fields and is to share with me in all my property I hold in Aztec, N. Mex. to share equally with me share & share alike." McHugh then represented that the Miller ranch had already been acquired and stood in Mrs. Bolger's name.

Lenihan thereafter interested numerous friends and relatives in the project, the total of all contributions amounting to some $9,000.

This evidence satisfactorily shows that McHugh obtained the money of Mrs. Bolger and her father upon a promise to acquire title to the property in question in the name of Mrs. Bolger; that he obtained money from Sahara on the representation that he had already done this; and that numerous other sums were accepted by him upon similar representations made by Lenihan and by which McHugh was no doubt bound.

But appellees cannot stop with showing that they have been overreached or defrauded. In this case, as it comes to us, nothing will avail them but a resulting trust. The facts must be sufficient to raise the conclusive presumption of equity that McHugh intended to take and hold title for the interveners. White v. Mayo, 31 N. M. 366, 246 P. 910. That requires proof, not only that the interveners furnished the money for the purpose, but that

their money was so applied. White v. Mayo, 35 N. M. 430, 299 P. 1008.

We might assume, though not deciding, that, under somewhat different circumstances, a trust might have been established in favor of Mrs. Bolger and Frank M. Lenihan. At least McHugh had their money in his hands and might have used it as consideration for the property. But such is not the trust claimed or established. It is plain that none of the other investors can qualify. They contributed after the acquisition. They did not expect their money thus to be used, and it was not. They merely invested in McHugh's project, upon a false representation as to a security. Yet the trust is claimed and was declared in their favor.

Mrs. Bolger, in her individual capacity, is an intervener. She did not claim and has obtained no relief independent of or distinct from that given to other investors. Her own testimony discloses that she did not expect to have a beneficial title. It was to be in trust for herself, her father, and those whom they might interest. There is no suggestion that she was not investing in the project as a whole. Though the purchase of the Miller tract was immediately proposed, and her money was to be used for the purpose, it was still but a part of a general scheme of development and exploitation, from which she expected to obtain profit, but to avoid loss, in some manner difficult to understand, by having the Miller property as security for an indefinite number of investors.

Lenihan's position is somewhat different. He claims, notwithstanding the language of the receipt, that his $700 was to procure him an interest in the Miller property only; that he was to have no interest in the general scheme unless he should contribute further; and that McHugh retained no interest in the Miller tract. Just how McHugh would be benefited by inducing others to buy the Miller property, keeping it separate from his own; how transferring this adjoining, producing property from Mrs. Miller to Mrs. Bolger would "take the wildcat out of" McHugh's leases; or why Lenihan would consent to and promote investment of $9,000 in the $2,000 Miller tract, and the consequent diminution of his interest, unless he was to profit from the general project; are matters not plain to our minds. However, he is not a party, and claims no relief, except, proportionally with other investors who, individually, could have none here.

What we have said is not to cast doubt upon the good faith of the witnesses. It is in inquiry whether they have presented a situation involving a resulting trust. On the whole, the evidence adduced by appellees seems to disclose a situation of investors, eager for easy profits, grasping at a promised security not fully understood, which they cannot now explain, and altogether indefinite and impracticable.

No sympathy need be wasted on McHugh, if some legal theory had been evolved by which form and substance could be given to this "security." But he is not a party. Noth-

ing here stands between plaintiffs and the relief they claim, except a deed which is void unless the grantor's title was a trust.

The trust declared is not only for the benefit of Mrs. Bolger and her father, whose money may have gone into the land. It is equally and proportionately for Sahara and numerous others whose money was otherwise used. Mrs. Bolger can claim no separate benefit. Her own title was to be a trust. Lenihan is not here as a party. So, we conclude that there has been a failure of those for whose benefit the trust has been claimed and declared. to trace their money into the property in question.

There is another failure of proof. To identify the money of any investor as the whole or an aliquot part of the consideration, it would seem to be essential that we know at the outset what the consideration was. There is no known reason to suppose that the actual consideration could not have been shown. Yet appellees made no effort to do so. The only evidence on the point is that of McHugh, testifying for appellants. He says that the consideration was $100 in cash, of his own money, and his undertaking, subsequently performed, by legal proceedings, to disencumber the land of an outstanding lease. It is not enough for appellees' counsel to discredit McHugh. If this was not the consideration, what was it?

We thus feel constrained to hold that there is error in the conclusion that the McHugh title was a trust.

Appellants contend that, the claimed title of appellees the interveners having failed, they were and are entitled to judgment against appellee the defendant, on undisputed facts, in a sum which we compute at $367.50. The point is not contested.

The judgment is reversed. The cause will be remanded with a direction to enter judgment dismissing the intervention, and for the plaintiffs as against the defendant in the sum just named. It is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.