## NEW MEXICO POTASH & CHEMICAL CO. v. INDEPENDENT POTASH & CHEMICAL CO.

### No. 2094.

Circuit Court of Appeals, Tenth Circuit.

Nov. 6, 1940.

Tom W. Neal, of Santa Fé, N. M. (Caswell S. Neal, of Carlsbad, N. M., and J. S. Vaught and George R. Craig, both of Albuquerque, N. M., on the brief), for appellant.

G. L. Reese, Jr., of Carlsbad, N. M. (James W. Stagner, of Carlsbad, N. M., and David B. Richardson, and Hayes, Richardson, Shartel & Gilliland, all of Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

New Mexico Potash Company, a corporation organized under the laws of New Mexico, hereinafter called plaintiff, sued Independent Potash and Chemical Company, a corporation organized under the laws of Arizona, hereinafter called Independent, and Union Potash and Chemical Company, a corporation organized under the laws of Colorado, hereinafter called Union. The court dismissed the first amended complaint. Plaintiff appealed, and we dismissed the appeal on the ground that since the order merely dismissed the pleading, not the action, it was nonappealable. 106 F.2d 1010. Thereafter, with leave so to do, plaintiff filed a second amended complaint; but subsequently the court vacated the order permitting the filing of such complaint and denied permission to file it for the reason that by taking the purported appeal from the order dismissing the first amended complaint plaintiff elected to stand upon that complaint and waived its right to further amend, and the court dismissed the action on the ground that the second amended complaint did not cure the defects in its predecessor. Plaintiff appealed.

It was alleged in the first amended complaint that plaintiff owned a permit issued by the United States to prospect for potash upon certain described public land in Eddy County, New Mexico; that Independent gave plaintiff 156,000 shares of its common stock in exchange for such permit; that Independent did not have a permit authorizing the sale or other disposition of its

stock in New Mexico, as required by the Securities Act of the state, and therefore the transfer of such stock to plaintiff was void and constituted no consideration for the permit; that Independent assigned the prospecting permit to Union; that Union agreed to issue to Independent 160,000 shares of its common and 1,000 shares of its management stock in exchange for the permit; that half of such stock had been issued and delivered to Independent and it had been mutually agreed between the two corporations that Union should retain unconditionally the balance; that Independent could not return the permit to plaintiff; that plaintiff owned the stock issued by Union and delivered to Independent for the permit; that the permit exceeded the stock in value; that Independent had no assets other than the stock received from Union; and that it was about to distribute such stock among its stockholders. The prayer was that plaintiff be adjudged and decreed to be the owner of such stock issued by Union and held by Independent; that Independent be declared to hold it in trust, and directed to transfer it to plaintiff; that Independent be enjoined from selling or transferring it to others; and that the court determine the value of the permit and the value of the stock, and make such order in accordance with the values as would require plaintiff to do equity.

The second amended complaint followed the allegations contained in its predecessor, with certain changes and with some amplification. It was not alleged that plaintiff had owned the permit. Instead, it was alleged that the permittee had owned it; that he and plaintiff entered into a written contract which provided that plaintiff and its assigns should have the sole and exclusive right to prospect, mine and develop the lands for potash and its allied products, and when potash and its allied products were discovered in commercial quantities he should assist plaintiff in securing a lease in its favor from the Secretary of the Interior; that plaintiff should give the permittee an overriding royalty on the gross value of the products mined; that at Carlsbad, New Mexico, Independent gave plaintiff 156,150 shares of its common stock, and in exchange therefor plaintiff assigned and transferred to Independent all of its right, title, and interest in the permit; that thereafter the permittee, in compliance with the rules and regulations promulgated by the Secretary of the Interior, executed an assignment of all his interest in the permit

direct to Independent, assignee of plaintiff, and that Independent agreed to pay him the overriding royalty on the gross production; that Independent later assigned the permit to Union; and that Union was an innocent purchaser thereof without notice of the rights of plaintiff. In all other material respects the pleading and prayer were substantially identical with the earlier complaint.

Section 1, chapter 44, Laws of New Mexico, 1921, defines the term "speculative securities" to include all securities, the value of which materially depends upon proposed or promised future promotion or development rather than upon present tangible assets or conditions; section 2 provides that it shall be unlawful for any person, co-partnership, association, common-law trust or trusteeship or corporation, to sell or offer for sale any speculative securities by means of any advertisements, circulars, prospectuses, or personal solicitation, or by any other form of public offering, without first securing a permit in the manner therein specified; and section 12 provides that any one who shall commit any act declared unlawful by section two—and other named sections—shall be guilty of a felony, and on conviction shall be punished by fine, or imprisonment, or both. These provisions, now sections 32-701, 32-702, and 32-712, N.M.Comp.St. 1929, are designed to safeguard the public against imposition through shady or insubstantial schemes and the securities based upon them. Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480, L.R.A.1917F, 514, Ann.Cas.1917C, 643; Ashley & Rumelin, Bankers v. Brady, 41 Idaho 160, 238 P. 314; United Bank & Trust Co. v. Joyner, 40 Ariz. 229, 11 P.2d 829; People v. Federated Radio Corporation, 244 N.Y. 33, 154 N.E. 655; Goodyear v. Meux, 143 Tenn. 287, 228 S.W. 57. And in harmony with that manifest purpose, it is settled law in New Mexico that a single transaction involving the exchange of a speculative security for mineral property, without a permit authorizing the sale of such security, comes within the ambit of the legislation and is enough to support an action in equity for rescission and recovery back of the mineral property. Marney v. Home Royalty Ass'n of Oklahoma, 34 N.M. 632, 286 P. 979.

But plaintiff did not seek merely to rescind the transaction and recover back the permit. It sought to impress a con-

structive trust upon the capital stock issued by Union and delivered to Independent in exchange for the permit. The permit was issued under the provisions of the Act of February 7, 1927, 44 Stat. 1057, 30 U.S.C.A. § 281 et seq., and contained a provision that it should not be assigned or transferred without the express written consent of the Secretary of the Interior. It was not alleged in the second amended complaint that plaintiff owned the permit, or that the permittee undertook to assign or transfer it to plaintiff, either with or without the consent of the Secretary. It was merely alleged that under its written contract with the permittee, plaintiff was authorized to develop the premises and if potash were discovered the permittee should aid plaintiff in securing a lease. Plaintiff never owned the permit. Its sole and exclusive right was to develop the premises and in the event of the discovery of potash in commercial quantities to obtain a lease from the Secretary of the Interior. It assigned that right to Independent, and the permittee subsequently transferred the permit to that company. The gravamen of the cause of action relied upon was that Independent transferred to plaintiff a speculative security for which no permit had been issued authorizing its sale in New Mexico, in exchange for the right of plaintiff under the contract with the permittee. The stock was issued by a corporation organized under the laws of Arizona, and the Securities Act of New Mexico does not provide that speculative securities issued by a foreign corporation but sold in the state without an authorizing permit shall be void or voidable. Instead, it only provides that it shall be unlawful for any one to sell or offer for sale within the state speculative securities for which an authorizing permit has not been issued. The stock was not void for illegality. Its sale or conveyance to plaintiff was voidable for contravention of the statute. Marney v. Home Royalty Ass'n of Oklahoma, supra.

■ A constructive trust is one which does not arise by agreement or from the intention of the parties, but by operation of law in order that justice may be effected in the most efficient manner. Such a trust may grow out of a variety of facts, but fraud, either actual or constructive, is an essential element and must always be pres-

ent. White v. Mayo, 31 N.M. 366, 246 P. 910; Kester v. Amon, 81 Mont. 1, 261 P. 288; Colorado & Utah Coal Co. v. Harris, 97 Colo. 309, 49 P.2d 429; Jaeger v. Sechser, 65 S.D. 38, 270 N.W. 531; Scarney v. Clarke, 282 Mich. 56, 275 N.W. 765; Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8; Eisinger Mill & Lumber Co. v. Dillon, 159 Md. 185, 150 A. 267; Reilly v. Wheatley, 1 Cir., 68 F.2d 297.

■■ It was not alleged in the first or second amended complaint that a fiduciary relation existed between the parties, or that Independent made any false statements or representations upon which plaintiff relied, either respecting the issuance of a permit authorizing the sale of the stock or otherwise, or that it concealed from plaintiff any fact in respect to the absence of such permit. Plaintiff contends that allegations of that nature were not necessary. It argues that the allegations showing a sale of the stock in violation of the Securities Act were sufficient to show fraud, without a specific allegation of fraud. One offering a speculative security for sale impliedly represents that compliance has been had with the provisions of the Securities Act, and the falsity of the representation may support an action for breach of warranty. But the sale of such a security, of itself and without more, merely constitutes a warranty for the breach of which appropriate relief may be had, as distinguished from actual or constructive fraud which is requisite to a constructive trust. Compare, Mary Pickford Co. v. Bayly Bros., 12 Cal.2d 501, 86 P.2d 102. It is thus manifest that the cause of action pleaded in both complaints lacked an essential element to the granting of the relief which plaintiff sought.

The questions already discussed are decisive of the case and eliminate need to consider other points argued in the briefs and at the bar of the court. Since the first and second amended complaints each failed to state a cause of action for a constructive trust upon the stock which plaintiff sought to reach and recover, the court did not err in striking the last pleading and in dismissing the action. Accordingly, the judgment is affirmed.

HUXMAN, Circuit Judge, concurs in the result.