(July 9, 1925.)

ASHLEY & RUMELIN, BANKERS, a Corporation, Appellant, v. J. ROBB BRADY, Respondent.

[238 Pac. 314.]

BLUE SKY LAW — EFFECT OF NONCOMPLIANCE ON NOTE GIVEN FOR STOCK — BILLS AND NOTES — BONA FIDE PURCHASER — PAYMENT OF VALUE — BEST EVIDENCE — BOOKS OF ACCOUNT — BURDEN OF PROOF.

1. A note given for the purchase of stock in a corporation which has not complied with the blue sky law is valid in the hands of a *bona fide* holder but voidable in the hands of one not a *bona fide* holder.

2. A bank discounting a note by passing its amount to the credit of the indorser becomes a purchaser for value only to the

Publisher's Note.

1. Rights of *bona fide* holder of note given for corporate stock subscription in violation of law, see note in 4 A. L. R. 1330.

2. Bank discounting note for depositor as holder in due course where credit given for proceeds, see notes in 11 Ann. Cas. 206; 6 A. L. R. 252; 24 A. L. R. 901.

extent such credit has been exhausted before the note matures or before notice to it of any defenses to the note.

3. An officer of a bank having personal knowledge of the fact may, over objection that it is not the best evidence, testify that a depositor has checked out the entire amount to his credit.

4. Where it is shown that a note was given for the purchase of stock in a corporation which had not complied with the blue sky law, the burden is upon the holder to prove that he was a *bona fide* purchaser.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County.   Hon. O. R. Baum, Judge.

Action on promissory note.   Directed verdict for defendant.   *Reversed and new trial granted.*

White & Bentley, for Appellant.

The illegality of the consideration of a negotiable note does not vitiate it in the hands of a *bona fide* purchaser, whether the illegal act is *malum in se* or *malum prohibitum,* unless the statute making the act illegal, expressly or by necessary implication, makes the instrument void in the hands of all holders with or without notice.   (*Gray v. Boyle,* 55 Wash. 578, 133 Am. St. 1042, 104 Pac. 828.)

Where in an action on a note plaintiff made a *prima facie* case, proof of fraud in securing the note will not defeat it unless notice thereof is brought home to the plaintiff. (*First Nat. Bank v. Court,* 183 Wis. 203, 197 N. W. 798.)

Where the plaintiff's testimony is not only consistent with good faith of the purchaser, but such that no fair-minded person could draw any other inference therefrom, the court possesses no option but to give judgment for the plaintiff. (*Southwest Nat. Bank v. Lindsley,* 29 Ida. 343, 158 Pac. 1082.)

Where a witness assumes to know a fact he is competent to testify on the subject, even though he may also have books or records by which such facts could be established or corroborated.   (2 Jones' Commentaries on Evidence, sec. 201a; *Finseth v. Scherer,* 138 Minn. 355, 165 N. W. 124;

*Fidelity & Deposit Co. of Maryland v. Bassett* (Wash.), 233 Pac. 325; *Cowdery v. McChesney,* 124 Cal. 363, 57 Pac. 221.)

Where a bank was a *bona fide* purchaser of a note before maturity, after the bank had learned of a failure of consideration between the payee and maker, and after maturity of the note, bank had funds of payee on deposit, and failed to protect itself with them, will not prevent the bank from recovering from the maker. (*Lincoln Alliance Bank v. Landers Co.,* 297 Fed. 225.)

Peterson & Coffin, for Respondent.

Where a bank, for the purpose of showing that it is the *bona fide* purchaser in due course of a negotiable instrument, offers evidence to the effect that it credited the person from whom it purchased the paper upon its books with the amount at which it purchased the note, and fails to prove that the credit was ever canceled by withdrawals or applied by the bank · to the payment of claims in its hands against its vendor, it is not a *bona fide* holder. (*Thompson v. Sioux Falls Nat. Bank,* 150 U. S. 231, 14 Sup. Ct. 94, 37 L. ed. 1063; *McNight v. Parsons,* 136 Iowa, 390, 125 Am. St. 265, 15 Ann. Cas. 665, 113 N. W. 858, 22 L. R. A., N. S., 718.)

The stock which forms the consideration for the note sued upon was sold in violation of the so-called blue sky law of the state of Idaho, which rendered the note void. (*Zimmerman v. Brown,* 30 Ida. 640, 166 Pac. 924.)

"Contracts made in a state by a foreign corporation in violation of a statute requiring foreign corporations to comply with certain conditions before doing business in the state have generally been held to be absolutely void and unenforceable where the statute does not expressly require any penalty for failure to comply with its provisions but is prohibitory in form." (14 C. J., p. 1295.)

All agreements made by a corporation before ˙complying with the provisions of the foreign corporation law are void. (*First Nat. Bank of Price v. Parker,* 57 Utah, 290, 194 Pac. 661.)

GIVENS, J.—Ashley & Rumelin, Bankers, a Corporation, appellant, sought collection of a promissory note in the sum of $3,000 executed by respondent, Brady, payable to the order of F. K. Masters, who subsequently sold the note to appellant.

Appellant alleged that the note was sold to it in due course, for a valuable consideration, before maturity, and that it was the present holder and owner of the note. The answer put in issue the question of the purchase by appellant of the note in due course for a valuable consideration prior to maturity and as an affirmative defense alleged want of consideration and that the note had been given for stock in the Beaver Film Company, which company was not authorized to do business in the state under the statute regulating foreign corporations or to sell stock in this state under the "blue sky law" (C. S., chap. 206), and therefore that the note was void.

The third ground upon which respondent based his motion for a verdict in his favor was as follows:

"That the Beaver Film Company was not authorized to do business in the state of Idaho at the time of the giving of the note; that the said company was not authorized under the blue sky law to sell stock in the State of Idaho, the evidence showing that the note was given for the delivery, in connection with delivery, and for the sale of the stock of the so-called Beaver Film Company."

From the uncontradicted testimony of witnesses for both parties to the action it conclusively appears that the note was given for stock in the Beaver Film Company and that Masters was acting as the agent or representative of the company and sold the note in question to appellant for the Beaver Film Company, and the funds from such sale were placed to its credit in the Ashley & Rumelin Bank.

The Beaver Film Company came within C. S., sec. 5305, classifying certain corporations, associations and partnerships, selling or negotiating stocks, bonds or other securities as investment companies.

C. S., sec. 5306, requires such investment companies to procure a license and to file certain statements.

C. S., sec. 5309, authorizes the Department of Commerce and Industry to grant or refuse permits for such companies to do business within the state of Idaho, and C. S., sec. 5310, makes it unlawful for any such company to transact business without having such permit and without having complied with the law, and C. S., sec. 5317, provides a penalty for violations of the law.

The question to be determined is the intent of the legislature in passing this statute, which must be determined from the language thereof, the subject matter, the wrongs sought to be prevented and the purposes accomplished, that is, whether for protection of the public or merely for raising revenue. (13 C. J. 422, and cases cited in note.) In *Zimmerman v. Brown*, 30 Ida. 640, 166 Pac. 924, this court said:

"A statute prohibiting the making of contracts, except in a certain manner *ipso facto* makes them void if made in any other way. (*9 Cyc. 476.*) Where a license is prescribed by statute not as a revenue measure, but for the protection of the public, as a requisite to a particular trade or business, such as that of the keeper of a stallion, contracts violative thereof because of lack of license are void."

The Idaho blue sky law, excepting that part pertaining especially to mining corporations, not under consideration herein, is identical with the law of Kansas, Revised Statutes of Kansas, 1923, chap. 17, art. 12, and practically identical with Comp. Laws of Mich. 1915, secs. 11945–11969; Supp. to Page and Adams Ann. Code of Ohio 1916, vol. 2, secs. 6373—1 to 6373—34; South Dakota Rev. Codes 1919, secs. 10127–10149; Rev. Codes of Mont. 1921, secs. 4026–4055; Digest of Stats. of Ark. 1921, secs. 750–771; Rev. Stats. Arizona 1913, Civil Code, title 9, chap. 9.

In *Hall v. Geiger-Jones Co.*, 242 U. S. 539, 37 Sup. Ct. 217, 61 L. ed. 480, the Ohio blue sky law was upheld and in the course of the opinion the court says:

"It will be observed, therefore, that the law is a regulation of business, constrains conduct only to that end, the

purpose being to protect the public against the imposition of unsubstantial schemes and the securities based upon them. Whatever prohibition there is, is a means to the same purpose, made necessary, it may be supposed, by the persistence of evil and its insidious forms and the experience of the inadequacy of penalties or other repressive measures. The name that is given to the law indicates the evil at which it is aimed; that is, to use the language of a cited case, 'speculative schemes which have no more basis than so many feet of "blue sky" '; or, as is stated by counsel in another case 'to stop the sale of stock in fly-by-night concerns, visionary oil wells, distant gold mines, and other like fraudulent exploitations.' Even if the deceptions be regarded as theoretical, the existence of evil is indicated, and a belief of its detriment; and we shall not pause to do more than to state that the prevention is within the competency of government, and that the appreciation of the consequences of it is not open for our review (citing authorities)." (*State v. Agey,* 171 N. C. 831, 88 S. E. 726; *Standard Home Co. v. Davis,* 217 Fed. 904.)

In *Edward v. Ioor,* 205 Mich. 617, 172 N. W. 620, sec. 14 of the Commission Act of that state provided that it should be unlawful for any investment company to sell or negotiate for the sale of stock, not exempt, unless and until the commission had approved thereof and issued its certificate in accordance with the provisions of the act. A sale of stock had been made and the act not complied with and the court said:

"The sale, and it was a sale as we have seen, of its stock to plaintiff and others was in violation of the Act and submitted all connected therewith as vendors to the penalties of its violation. The sale of stock without approval by a public board or commission was not bad at common law, is not *malum in se,* but by the terms of the Act it is *malum prohibitum.* The act in question was passed under the police power of the state (see *Merrick v. Halsey & Co.,* 242 U. S. 568, 37 Sup. Ct. 227, 61 L. ed. 498), to prevent fraud in the sale of stocks, and to safeguard the public from ex-

ploitation at the hands of the promoter. It was passed to protect and for the benefit of the purchaser. It laid penalties upon the seller, not upon the buyer. . . . .

"This sale to plaintiff of the stock of the Arizona Piano Company was in conflict with the terms of a penal statute, *malum prohibitum,* and void, although not expressly declared so by the statute: *Loranger v. Jardine,* 56 Mich. 518, 23 N. W. 203; *Brewing Co. v. Wall,* 98 Mich. 158, 57 N. W. 99; *In re Reidy's Estate,* 164 Mich. 167, 129 N. W. 196; *Ferle v. City of Lansing,* 189 Mich. 501, 155 N. W. 591; *Cashin v. Pliter,* 168 Mich. 386, Ann. Cas. 1913C, 697, 134 N. W. 482, *Maurer v. Greening Nursery Co.,* 199 Mich. 522, ·165 N. W. 861, 168 N. W. 448.''

From the decisions it appears that the blue sky law comes within the police power of the state and the intent of the framers of the law was to protect the public. From the language in the statutes it is clear that the requirements necessary to the sale of stock by such corporation were not passed merely as a revenue measure but the real intent was to safeguard the public from unsubstantial securities. Furthermore the act prescribes a penalty for each offense, and sec. 5310 provides it shall be unlawful to sell such stock until the required documents are filed.

It follows that the Beaver Film Company not having·complied with the blue sky law and its consequent acts contravening the statute being *malum prohibitum,* the note given in payment for stock in such noncomplying company is voidable in the hands of one not a *bona fide* holder (*Zimmerman v. Brown, supra; Metz v. Jones,* 39 Ida. 330, 227 Pac. 591); otherwise if in the hands of a *bona fide* holder. (*City Nat. Bank v. De Baum* (Ark.), 265 S. W. 648; *Planters' Bank & Trust Co. v. Felton* (N. C.), 124 ·S. E. 849; *Niemeyer v. Dougan,* 31 Ga. App. 99, 119 S. E. 544; *J. Furman Evans Co. v. Bryson,* 146 Ga. 249, 91 S. E. 71.)

A bank discounting a note by passing its amount to the credit of the indorser becomes a purchaser for value only to the extent such credit has been exhausted before the note matures or before notice to it of any defenses to the

note. (*Alabama Grocery Co. v. First Nat. Bank*, 158 Ala.
143, 132 Am. St. 18, 48 So. 340; *Tatum v. Commercial Bank
& Trust Co.*, 185 Ala. 249, 64 So. 561; *German-American
Nat. Bank v. Lewis*, 9 Ala. App. 352, 63 So. 741; *McKnight
v. Parsons*, 136 Iowa, 390, 125 Am. St. 265, 15 Ann. Cas.
665, 113 N. W. 858, 22 L. R. A., N. S., 718; *National Bank v.
Foley*, 54 Misc. Rep. 126, 103 N. Y. Supp. 553; *Wallabout
Bank v. Peyton*, 123 App. Div. 727, 108 N. Y. Supp. 42;
*Union Nat. Bank of Columbus v. Mailloux*, 27 S. D. 543, 132
N. W. 168; *Commerce Trust Co. v. Same*, 27 S. D. 588, 132
N. W. 176; *Elgin City Banking Co. v. Hall*, 119 Tenn. 548,
108 S. W. 1068; *Miller v. Norton & Smith*, 114 Va. 609,
77 S. E. 452; *Oppenheimer v. Radke & Co.*, 20 Cal. App.
518, 129 Pac. 798; *National Bank of Commerce v. Armbruster*,
42 Okl. 656, 142 Pac. 393; *Hodge v. Smith*, 130 Wis. 326,
110 N. W. 192; *Minatare Bank v. Wilson* (Neb.), 199 N. W.
111; *First State Bank & Trust Co. v. First Nat. Bank*, 314
Ill. 269, 145 N. E. 382; *Varney v. Nat. City Bank of In-
dianapolis* (Ind. App.), 139 N. E. 326; *Trevisol v. Fresno
Fruit Growers' Co.*, 195 Iowa, 1377, 192 N. W. 517; *Anthon
State Bank v. Bernard,* 194 Iowa, 1090, 191 N. W. 283;
*Southern Trust Co. v. Vaughn*, 277 Fed. 145; *Alamo Nat.
Bank v. Dawson Produce Co.*, 78 Okl. 235, 190 Pac. 393;
*Citizens Nat. Bank v. Bucheit*, 14 Ala. App. 511, 71 So. 82,
72 So. 1019; *Fruitticher Electric Co. v. Birmingham Trust
& Sav. Co.*, 201 Ala. 676, 79 So. 248.)

The purchaser sought to introduce oral testimony as to the
funds of Masters and the Beaver Film Company in the
plaintiff bank at the time the note became due. Objection
was made on the ground that such evidence was not the best
evidence, the court first admitting the evidence and later
striking it out. Appellant contends that this was error.

The questions in dispute were propounded to Mr. Ashley
and Mr. Rumelin, cashier and president, respectively, of the
appellant bank. The answer given by Mr. Rumelin, presi-
dent of the bank, without any preliminary showing of knowl-
edge, was to the effect that F. K. Masters and the Beaver
Film Company had no funds at all in their bank at the

time the note became due. There was also evidence to the effect that Mr. Rumelin knew the business in which this film company was engaged and that the note was credited to the account of the Beaver Film Company. The objection was that the evidence was incompetent, irrelevant and immaterial and not the best evidence, the latter portion referring to the absence of the books of the bank. This evidence was material and relevant and if inadmissible because of incompetency was so because the witness had not shown himself qualified by not having personal knowledge of the transactions and the status of the account. The objection of incompetency is generally considered as applying to the evidence itself and not the witness and the specific objection that the books were the best evidence would indicate that that was the ground of incompetency urged and not lack of qualification of the witness to testify. If the witnesses had sufficient personal knowledge of the transaction other than information they had received from the books to state that this deposit had all been checked out they should have been permitted to testify. (Jones' Commentaries on Evidence, vol. 2, sec. 201A; *Finseth v. Scharer*, 138 Minn. 355, 165 N. W. 124; *Cowdrey v. McChesney*, 124 Cal. 363, 57 Pac. 221; *Oliver v. Weaver*, 72 Colo. 540, 212 Pac. 978; *Fidelity & Deposit Co. of Maryland v. Bassett* (Wash.), 233 Pac. 325; *Sunshine Oil Corp. v. Dooley* (Tex. Civ.), 238 S. W. 357; 22 C. J. 990, note 50; Elliot on Evidence, vol. 1, p. 306, sec. 216; *Rawleigh v. Thompson*, 122 S. C. 43, 114 S. E. 702.) This objection, not being on the ground of lack of foundation or that the witnesses had not shown themselves qualified to testify, there was sufficient evidence of knowledge on the part of these witnesses to justify the admission of the testimony that the deposit of this company and Masters with appellant bank had been entirely exhausted. The rejection of this evidence was therefore erroneous, and being vital on the issue of whether appellant was a *bona fide* purchaser was prejudicial.

Where it is shown that a note was given for the purchase of stock in a corporation which had not complied with the

Points Decided.

blue sky law the burden is upon the holder to prove that he was a *bona fide* purchaser. (*Farmers & Merchants' State Bank v. Schaffer*, 172 Iowa, 173, 154 N. W. 485; *Waukee Sav. Bank v. Jones*, 179 Iowa, 261, 159 N. W. 691.)

The case is therefore reversed and remanded, with instructions to grant a new trial, and it is so ordered. Costs awarded to appellant.

William A. Lee, C. J., Wm. E. Lee, Budge and Taylor, JJ., concur.