597 P.2d 222

E. R. FRACHISEUR and Henry T. Cardinale and Elizabeth Cardinale, Husband and Wife, Plaintiffs-Respondents,

v.

MOUNTAIN VIEW IRRIGATION COMPANY, INC., Defendant-Appellant.

No. 12457.

Supreme Court of Idaho.

July 3, 1979.

Kevin F. Trainor, of Walker & Kennedy, Twin Falls, for defendant-appellant.

Donald A. Ronayne, of Rayborn, Rayborn & Ronayne, Twin Falls, for plaintiffs-respondents.

BISTLINE, Justice.

In this action we affirm the trial court decision holding Mountain View Irrigation Company, Inc., appellant, liable to respondents Frachiseur, Elizabeth Cardinale and Henry T. Cardinale, in their action to recover the purchase price paid by them for Mountain View's unregistered stock. Mountain View by its assignments of error makes no challenge to the trial court's findings of fact, all of which are essential to a consideration of the issues which are raised, and which serve to well set forth the circumstances giving rise to the controversy. Those findings are, verbatim:[1]

"1. The defendant is, and has been, a corporation organized and in existence by virtue of the laws of Idaho at all times material to this action. The purpose for its existence is to provide works for the transportation of irrigation water, filed on by desert entrymen, from the water's source to desert-entry land filed on, or owned, by stockholders of defendant. Ownership of a valid desert-entry claim is a prerequisite to the purchase of stock in the defendant corporation, but nevertheless some stock was purchased by individuals who did not own a desert-entry claim.

"2. The defendant has issued approximately 20,000 shares of no-par assessable capital stock in blocks of 320 shares, to approximately 50 people. Approximately fifteen people transferred cash to the corporation in consideration of stock issued to them, while approximately thirty-five people transferred Twin Buttes Corporation stock to the defendant in consideration of defendant's stock issued to them as a result of a merger of the two corporations. The defendant has never registered as a "public corporation" under State or Federal Statutes.

"3. On September 5, 1971, the plaintiff Frachiseur, acting on behalf of himself, his sister Elizabeth Cardinale, and his brother-in-law, Henry T. Cardinale, tendered to the defendant the sum of $2,880.00, and requested the defendant to sell 320 shares of its capital stock to each of the three parties just named. The defendant accepted the tender, and on September 25, 1971, issued three stock certificates—one evidencing 320 shares in the name of Edgar R. Frachiseur, and one evidencing 320 shares in the name of Henry T. Cardinale. A certificate evidencing 320 shares of stock in the name of Pauline E. Frachiseur was offered, but was not admitted.

"4. Plaintiff Frachiseur had, prior to September 5, 1971, graduated from an accredited law school, was admitted to practice law in California, but not Idaho. He was employed on a straight salary as a law clerk in the office of Theodore Behm of Buhl, Idaho, between May, 1971, and September 13, 1971, and as an attorney between September 13, 1971, and December 31, 1971. At no time was he ever a partner of Theodore Behm, or an associ-

---

1. The trial court's Memorandum Opinion comprehensively addressed the legal issues involved after first making the findings of fact.

ate, other than as a salaried employee. He knew, or should have known, that the defendant was a client of his employer, Theodore Behm, but at no time did Frachiseur perform any work of a legal nature for the defendant directly or through his employer. He has never been a desert entryman, or filed upon, or owned, desert-entry land.

"5. Theodore Behm was a practicing attorney in Buhl, Idaho, at all times material to this action, and was the attorney for, and represented, the defendant. The defendant's corporate records were kept at Theodore Behm's law office.

"6. At all times material to this action, the plaintiff, Henry T. Cardinale, was an insurance salesman. He has never been a desert entryman, or filed upon, or owned, desert-entry land.

"7. At all times material to this action, the plaintiff, Elizabeth Cardinale, has been employed as a library technician. She has never been a desert entryman, or filed upon, or owned, desert-entry land.

"8. The plaintiffs purchased the stock in question for investment purposes, and hoped to make a profit on their investment through its appreciation in value.

"9. Subsequent to the purchase of the stock, the defendant levied an assessment against all stock, which the plaintiffs failed to honor, and the defendant cancelled the stock of the plaintiffs on defendant's books."

In holding Mountain View liable, the trial court entered the following conclusions of law:

"1. It is unlawful for an Idaho corporation to sell its stock in Idaho unless it is registered with the Idaho Commissioner of Finance or is exempt from such registration.

"2. The issuer of corporate stock who pleads the exemption from registration requirements afforded to transactions not involving any public offering has the burden of proving that a public offering was not involved.

"3. When an offering is limited to those having access to the type of information that would be made available by registration statement, the offering is exempt as a private offering. Except for this limited circumstance, the offering is public and registration required.

"4. The plaintiffs are in the class of persons who seek a direct pecuniary profit from their investment and are unable to fend for themselves without whatever information might be revealed by a prospectus. As far as the plaintiffs are concerned, the defendants sale of the stock involved herein constituted a public offering necessitating registration.

"5. None of the plaintiffs purchased the securities in question with knowledge of the facts by reason of which said sale was in violation of the law, and therefore the plaintiffs are not barred from pursuing their civil remedies."

The amended complaint simply alleged that the stock was sold in violation of I.C. § 30–1416 because it was not registered, thereby entitling plaintiffs to recover the price paid, interest, costs, and attorneys fees. The answer of Mountain View admitted the sale, denied the illegality thereof, affirmatively alleging that the sale was a transaction exempt from the registration requirement "in that it did not involve a public offering," reliance being placed on I.C. § 30–1435.[2] A second affirmative defense was that Frachiseur, who acted for the Cardinales as well as for himself, had knowledge that the transaction was in violation of the Idaho Securities Act, for which reason, by virtue of I.C. § 30–1446(4), all

---

2. The exemption here relied upon by Mountain View is paragraph (1) of I.C. § 30–1435: "[A]ny isolated transaction [of] *sales not involving a public offering* . . ." We observe, as apparently did the parties and the trial court, the singularity of "isolated transaction" and the plurality of "sales not involving a public offering." No contention was made below that these three sales were a single isolated transaction.

plaintiffs were without standing to bring suit.[3]

In addressing the legal issues, the trial court in his Memorandum Opinion observed, as have counsel in their briefs in this Court, that there are "no Idaho cases from which we might determine just what is meant by 'sales not involving a public offering' but the federal courts have discussed similar language found in federal statutes," and in reaching the conclusion above set forth, he stated that he was guided by *Securities and Exchange Commission v. Ralston Purina Company*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), and *U. S. v. Custer Channel Wing Corporation*, 376 F.2d 675 (4th Cir. 1967), gleaning from those cases that a public offering is not involved "when stock is sold to buyers who possess enough intelligence, information and expertise to make a sound business judgment without the benefit of prospectus," but that, "on the other hand, if the buyer is in need of the protection afforded by the Securities Act—the disclosures provided in an approved prospectus—the sale does involve a public offering." From *Ralston, supra,* the Court extracted the principle that "The focus of inquiry should be on the need of the offerees for the protections afforded by registration."[4] He observed that in *Custer Channel Wing, supra,* after quoting the foregoing language in *Ralston*, the appellate court there went on to say: "* * * where it appears that an offering is limited to those persons who are able to fend for themselves, i. e., have access to the type of information that would be made available by a registration statement, the offering is exempt, as a private offering. But except for this limited circumstance, the offering is public and registration required."

Citing *Ralston* for his Conclusion No. 2, set out above that the burden of proving an exemption lies with the party asserting it, he concluded and held (not reproduced by counsel in drafting formal findings and conclusions) that Mountain View had not here sustained its burden, detailing his reasons for so holding:

"About the only evidence in this regard is that the plaintiff Frachiseur was a law-school graduate clerking in a law office in which the records of the defendant reposed. There is no direct evidence that any of the plaintiffs examined these records. There is no evidence as to what these records were, or what they might reveal if they were examined. There is no evidence indicating that the information the Commissioner of Finance might require be placed in any prospectus was available to any of the plaintiffs either in the office of Theodore Behm, or elsewhere.

"There is, on the other hand, considerable circumstantial evidence that the plaintiff Frachiseur was uninformed. He was buying assessable stock for an investment. He did not know whether the corporation was a profit or non-profit corporation. He was told, and presumably believed, each share represented one inch of irrigation water, and a right to put it on land. None of the plaintiffs were desert entrymen or landowners who had any use for the services the defendant was designed to provide—a works and means of transportation of irrigation water to desert-entry land owned by the stockholders. Nor is there any evidence indicating that plaintiffs might qualify as desert entrymen in the future."

Relative to Mountain View's second affirmative defense and disposition of the same adverse to Mountain View, as found in Conclusion No. 5, the trial court was equally careful to again set forth the rationale decidendi:

"As I understand this defense, it is that one who knows the facts surrounding a

---

3. This provision of the Securities Act reads:
"No person who has made or engaged in the performance of any contract in violation of any provision of this act or any rule or order hereunder or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its

making or performance was in violation, may base any suit on such contract. . . ."
4. A recent case handed down since this case was tried, the rationale of which sustains the trial court's view of the law, is *Doran v. Petroleum Management Corp.*, 545 F.2d 893 (5th Cir. 1977).

securities sale transaction and also knows the law applicable to those facts is estopped from asserting rights that might otherwise be available to him by virtue of Section 30–1446(1), Idaho Code. The trouble with this defense in the present case is that the defendants have not proven that the plaintiffs knew either the facts or the law. One could argue, I suppose, that a law-school graduate and attorney is presumed to know the law, but that presumption if it ever existed, fast disappeared when Mr. Frachiseur candidly admitted that he thought Idaho probably had a 'Blue Sky Law' but knew nothing of the specifics of that law. I believe him."

■ Mountain View argues in this Court that it should have prevailed on both its first and second affirmative defenses, making but two assignments of error, the first challenging Conclusion of Law No. 4 and the second challenging Conclusion of Law No. 5. In attacking Cconclusion No. 4, Mountain View cites *Securities and Exchange Commission v. Continental Tobacco Company of South Carolina, Inc.*, 463 F.2d 137 (5th Cir. 1972), bringing to our attention that therein were discussed the four criteria used by the Federal Court and the S.E.C. in determining whether an offer is public or private. Mountain View then proceeds, however, to observe that the *Continental Tobacco* court said, citing *Ralston Purina*, that "The ultimate test, [however], is whether the particular class of persons affected need the protection of the Act." From there Mountain View urges that the purchasers (plaintiffs) here did not need the protection of the Act. In doing so it relies entirely on its own view of Frachiseur's status, capabilities, and access to the corporate records in Mr. Behm's office and contacts with corporate officers—all of which flies directly into the face of the trial court's unchallenged findings of fact. Weight and credibility to be given the testimony of the witnesses is for a trial court, not this Court on appeal and of Mr. Frachiseur's testimony, the court below said, "I believe him."

■ Faced with that explicit statement, Mountain View in urging its second assignment and its second affirmative defense, urges upon us that we interpret I.C. § 30–1446(4) so that constructive knowledge, as well as actual knowledge, that performance of a contract which is in violation of the Act will defeat the right given by the Act to bring suit for recovery of the purchase price paid for unregistered stocks. We decline to do so for three reasons, the first two of which were involved at trial and are addressed here by the parties.[5] The narrow and specific allegation of the second affirmative defense was that the plaintiffs entered into the contract "with knowledge of the facts by reason of which its making or performance may have been in violation of the (Act)"; we do not read that allegation as tantamount to placing in issue at trial, as Mountain View now contends to be so, that Frachiseur and the Cardinales were possessed of such facts that, as reasonably prudent persons, they were required to make further inquiry and hence chargeable with all that further inquiry would have revealed. A second and equally compelling reason is that the statute as written is clear and unambiguous, needing no interpretation.

Holding that there was no error in the trial court's conclusions, we affirm. Costs, including attorneys fees, to respondent.

SHEPARD, C. J., and McFADDEN, DONALDSON and BAKES, JJ., concur.

---

5. Not addressed, and hence not briefed nor argued is the very distinct possibility that I.C. § 30–1446(4) is not applicable to a purchaser's action under this statute to recover the purchase price on a rescission theory. It seems more likely that paragraph (4) is aimed at foreclosing the right of action in a party attempting to maintain suit *on* the contract. See for example, cases prior to the Idaho Securities Act: *Chesney v. Bodily*, 50 Idaho 597, 298 P. 937 (1931); *McCornick & Co. v. Tolmie Bros.*, 42 Idaho 1, 243 P. 355 (1926); *McKinlay v. Javan Mines Co.*, 42 Idaho 770, 248 P. 473 (1926); and *Ashley & Rumelin v. Brady*, 41 Idaho 160, 238 P. 314 (1925). See also *Titan Oil & Gas, Inc. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974).