993 P.2d 609

Ann T. MEYERS, individually and as personal representative of the estate of James R. Meyers, deceased, Plaintiff–Appellant,

v.

Jack T. LOTT and Kathleen S. Lott, Defendants–Respondents,

John Scoresby and Marilyn Scoresby, husband and wife; George Hansen, individually and d/b/a Ideal Consultants and/or George Hansen and Associates; and John Does and Sally Does 1 thru 10, Defendants.

No. 24700.

Supreme Court of Idaho, Pocatello, September 1999 Term.

Jan. 6, 2000.

Brent W. Eames, Rexburg, and James T. Meyers, Provo, Utah, for appellant. James T. Meyers argued.

Thomsen & Stephens, Idaho Falls, for respondent. James D. Holman argued.

SCHROEDER, Justice.

Ann Meyers, individually and as the personal representative of the estate of her deceased husband, James R. Meyers, appeals the decision of the district court granting summary judgment in favor of Jack T. Lott and Kathleen S. Lott on the Meyers' claims under the Idaho and Federal Securities Acts.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

This case arises from losses in excess of $300,000 suffered by Ann and James R. Meyers (the Meyers) when they invested in what turned out to be a complex check-kiting scheme known as the Hansen Loan Program.

James Meyers first heard about the Hansen Loan Program from Jack Lott (Lott) in the spring of 1989 when Lott discussed the program on the golf course with friends. There is some dispute as to whether James Meyers approached Lott about investing in the program, or whether Lott initiated the discussions which resulted in the Meyers' investment. In any event, James Meyers told his wife that they should consider investing in the Hansen Loan Program. She wished to speak with Lott before making a decision, so a meeting was held at the Meyers' home in October of 1989. This meeting lasted between an hour and a half to two hours.

According to the evidence submitted on behalf of the Meyers, Lott told them that he had personally invested $100,000 with a great deal of success; that former Presidents Bush and Reagan were supporting the program; that the Meyers would be members of the "Jack Lott Group" and would enjoy special treatment; that ten wealthy persons from each state (Golden Eagles) had already invested over $100,000 each; that the Meyers would receive their money back within two to three days upon request; that "George to George" (George Washington to George Bush) commemorative coins were being marketed as part of the program, and Jerry Falwell had already purchased over 250,000 sets. The Meyers testified that they made the decision to invest immediately following this meeting with Lott.

George Hansen (Hansen) contacted James Meyers following the meeting. James Meyers later discussed his investments with both Hansen and John Scoresby (Scoresby), who acted on Hansen's behalf in many of the transactions. The Meyers had to liquidate some assets before investing, and this fact was communicated to Scoresby.

On February 21, 1990, the Meyers made their initial investment of $56,000. A few weeks later, the George Hansen Loan Program (Ideal Consultants) wrote a check to Lott which was returned for insufficient funds. Lott did not inform the Meyers that this check was returned. Between March and August of 1990, the Meyers made approximately $350,000 worth of loans to the Hansen Loan Program. The loan program ended when Hansen declared bankruptcy on October 31, 1990. A year later, on November 2, 1991, Hansen and Scoresby met with the investors who had lost their money. Lott says that it was clear at the meeting that the money would not be returned to the investors. The Meyers held out hopes of recouping their losses based upon representations made by Hansen.

The Meyers filed a complaint on February 22, 1993, alleging violations of the Idaho Securities Act (Idaho Code §§ 30–1401 to 1459 (1999)), the Utah Uniform Securities Act (Utah Code Ann. §§ 61–1–1 to 1–30 (1997)) and the Federal Securities Act of 1933 (15 U.S.C.A. § 77l (1997)). Scoresby, Hansen, Ideal Consultants, and John and Sally Does were initially listed along with Jack and Kathleen Lott (Lotts); however, the Lotts are the only defendants in this case.

Certain facts regarding Lott's status as a seller of securities are subject to dispute. The Meyers' accounting expert, Allen Suderman (Suderman), stated that Lott was given a $1,000 finder's fee for bringing Devon

Bratsman into the Hansen Loan Program. According to Suderman, Lott received compensation from the Hansen Loan Program for finding other investors. Ann Meyers stated that Hansen offered her a commission for getting her father involved in the program. Hansen says that he was encouraged by the Meyers to contact Ann's father.

Other facts which may reflect on Lott's status as a seller of securities are undisputed. Hansen told Lott that he would pay him 10% interest per month for money Lott invested; nevertheless, Lott sometimes received interest payments at rates in excess of 20%. Lott offered no direct explanation for this, but claimed that another investor, Bud Wright, also earned 20% interest. It is not disputed that Robert Gillespie was given finder's fees for bringing investors into the Hansen Loan Program.

The Lotts raised the affirmative defenses that they were not sellers within the meaning of the Idaho Code or the Federal Securities Act, that the court lacked jurisdiction over the Utah Securities Act and that any violation of the Federal Securities Act was barred by the statute of limitations. The district court granted summary judgment in favor of the Lotts. The district court employed the "financial benefit" test articulated in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). This test defines a seller of securities as one who expects pecuniary gain as a result of his/her efforts. The district court rejected the "substantial factor" test, urged by the Meyers, which requires only that a seller be a substantial factor in bringing about the purchase of securities. However, the district court reasoned that summary judgment would be appropriate even if the substantial factor test were utilized. The Meyers moved for reconsideration, supporting the motion with a second affidavit from Ann Meyers and a second affidavit from Suderman. The district court denied the motion for reconsideration and struck Ann Meyers' and Suderman's second affidavit. James Meyers died prior to the filing of the notice of appeal. Ann Meyers appears on her own behalf and as personal representative of the estate of James Meyers.

## II.

## STANDARD OF REVIEW

 In reviewing a district court's decision to grant summary judgment, this Court employs the same standard properly employed by the district court when it originally ruled on the motion. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718, 918 P.2d 583, 587 (1996). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Idaho Rule of Civil Procedure 56(c). The district court may not weigh the evidence to resolve controverted factual issues. *R.G. Nelson, A.I.A. v. Steer*, 118 Idaho 409, 410, 797 P.2d 117, 118 (1990).

## III.

## THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT

### A. The District Court Correctly Adopted the Financial Benefit Test.

The threshold question is how to define a "seller" of securities under the Idaho Securities Act. This issue has not been decided by this Court. Two tests have developed in other jurisdictions to define the term "seller." The "financial benefit test" was adopted by the U.S. Supreme Court in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), interpreting the Federal Securities Act. The "substantial factor test" has been utilized by courts in Texas, Kansas and Washington, interpreting their respective state securities acts. *See Lutheran Brotherhood v. Kidder Peabody & Co.*, 829 S.W.2d 300, 306 (1992), *set aside on other grounds* 840 S.W.2d 384 (1992), *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 930, 811 P.2d 1220, 1231 (1991), *Hoffer v. State*, 113 Wash.2d 148, 149, 776 P.2d 963, 964 (1989).

 The substantial factor test is a broad test which allows individuals to be classified as sellers when their acts are deemed to be a substantial factor in bringing about the particular securities violation. The states which

have utilized the substantial factor test have been motivated by a desire to protect as many investors as possible.

■ The financial benefit test defines a seller of securities as one who is motivated by pecuniary gain. This definition extends to "the person who solicits the purchase, motivated at least in part by desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl,* 486 U.S. at 630, 108 S.Ct. at 2070, 100 L.Ed.2d at 671. This Court has attempted to maintain uniformity and continuity with the Federal Securities Act and has utilized federal law in interpreting the Idaho Securities Act. *Frachiseur v. Mountain View Irrigation Company, Inc.,* 100 Idaho 336, 597 P.2d 222 (1979). That approach is appropriate in this case. The financial benefit test offers courts a clear line in deciding whether an individual meets the definition of a seller under the Idaho Securities Act, while at the same time offering adequate protection to investors. The district court correctly adopted the financial benefit test.

**B. The District Court Incorrectly Found that there Was No Genuine Issue of Material Fact.**

■ The district court granted summary judgment in favor of the Lotts, after concluding that no genuine issue of material fact existed. A review of the record presented to the district court indicates that a genuine issue of material fact does exist.

Lott received higher interest than one would expect in the investment program and received one check with the notation "F.F. (Bratsman)" which may be interpreted as a finder's fee. No clear explanation was given for the excess interest payments. It is undisputed that Robert Gillespie received finder's fees for bringing investors into the Hansen Loan Program. These pieces of evidence are not dispositive, but a reasonable inference can be drawn that the excessive interest payments were disguised compensation to Lott for finding investors. Construing the inferences in favor of the party opposing the motion, there are sufficient questions of fact to defeat the Lotts' motion for summary judgment.

## IV.

### THE DISTRICT COURT CORRECTLY APPLIED IDAHO SECURITIES LAW

■ Ann Meyers argues that the Utah Securities Act applies. The Utah Securities Act is foreign law which must be presented to the ruling court in accordance with I.R.C.P. 44(d) which provides in relevant part:

> If either party to an action intends to request the court to take judicial notice of the statutes or laws of a foreign state, a brief or memorandum citing such foreign law shall be submitted to the court and opposing counsel at least ten (10) days prior to trial or hearing.

Although the Meyers mentioned the Utah Securities Act to the district court several times, Rule 44(d) requires more than the simple invocation of foreign law. The intention behind this rule is to provide judges with all relevant information when they are asked to take judicial notice of foreign law. At a minimum, this includes the actual text of the law.

By merely referring to the Utah Securities Act, the Meyers failed to conform with requirements of I.R.C.P. 44(d). The district court was correct in applying Idaho law. In their motion for reconsideration, the Meyers made no attempt to supplement their pleadings with the text of the Utah Securities Act or to argue that the district court erred in failing to take judicial notice of the foreign law. The record was inadequate for the district court to consider application of the Utah law. Any claim under Utah law has been waived.

## V.

### ISSUES NOT ADDRESSED ON APPEAL

The Lotts raise two issues which this Court will not address on appeal. They argue that the one year statute of limitations under the Federal Securities Act barred the Meyers' claim and that the district court erred in striking certain affidavits.

This Court will not decide issues for the first time on appeal which were not sufficiently addressed by the district court. *Cf. Pullman–Standard v. Swint*, 456 U.S. 273, 291–293, 102 S.Ct. 1781, 1791–1792, 72 L.Ed.2d 66, 81–82 (1982), *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). Based on its conclusion that summary judgment was appropriate, the district court declined to address the statute of limitations argument. Accordingly, this issue is remanded to the district court.

The Lotts also argue that the district court erred in striking the supplemental affidavits of Ann Meyers and Alan Suderman. This Court need not reach this issue because the information presented in the initial affidavits was sufficient to defeat a motion for summary judgment.

## VI.

### ATTORNEY FEES AND COSTS

Both parties request attorney fees on the basis that the suit was "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12–121. Neither party has pursued or defended a frivolous claim on appeal. Neither party is awarded attorney fees. *Balderson v. Balderson*, 127 Idaho 48, 896 P.2d 956 (1995).

The appellant is awarded costs on appeal.

## VII.

### CONCLUSION

The district court's grant of summary judgment is vacated and the case is remanded for further proceedings. Appellant is awarded costs, but not attorney fees, on appeal.

Chief Justice TROUT and Justices SILAK, WALTERS, and KIDWELL, concur.