RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

11-5782
_____

PAUL DANIEL BENNETT, et al.,
                    *Plaintiffs-Appellants*,

    *v.*

HUNTER DURHAM; DURHAM & ZORNES,
                    *Defendants-Appellees*.


11-5918
_____

FREDERICK P. CLAYTON, JR., et al.,
                    *Plaintiffs-Appellants*,

    *v.*

HEARTLAND RESOURCES, INC., et al.
                    *Defendants*,

HUNTER DURHAM,
                    *Defendant-Appellee*.

Nos. 11-5782/5918

Appeals from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:10-cv-147—Thomas B. Russell, District Judge;
No. 1:08-cv-84—Joseph H. McKinley, Jr., Chief District Judge.

Argued: June 5, 2012

Decided and Filed: June 28, 2012

Before: MOORE, SUTTON and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Tera Rica Murdock, WALLER, LANSDEN, DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellants. Eugene N. Bulso, Jr., LEADER, BULSO & NOLAN, PLC, Nashville, Tennessee, for Appellees. **ON BRIEF:** Tera Rica Murdock,

1

WALLER, LANSDEN, DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellants in 11-5918. Joseph A. Woodruff, Rebecca Brinkley, WALLER, LANSDEN, DORTCH & DAVIS, LLP, Nashville, Tennessee, for Appellants in 11-5782 & 11-5918. Eugene N. Bulso, Jr., LEADER, BULSO & NOLAN, PLC, Nashville, Tennessee, Timothy L. Edelen, BELL, ORR, AYERS & MOORE, PSC, for Appellees. Colleen Keefe, COMMONWEALTH OF KENTUCKY, Frankfort, Kentucky, for Amicus Curiae.

_____

**OPINION**

_____

SUTTON, Circuit Judge. The Kentucky Securities Act imposes liability on (1) anyone who "offers or sells a security" in violation of its terms and (2) any "agent" of the seller who "materially aids" the sale of securities, defined as someone who "effect[s] or attempt[s] to effect" the sale. Ky. Rev. Stat. §§ 292.480(1), (4); 292.310(1). These related cases present the same question: Does the Act impose liability on an attorney who performs traditional legal services for a company offering its securities for sale to the public? The answer is no.

I.

Paul Bennett, Frederick Clayton and their co-plaintiffs invested in oil-and-gas-exploration companies: either Heartland Resources or Mammoth Resource Partners. When the companies' wells produced little oil or gas, the investors lost money. They sued. Claiming Heartland and Mammoth violated state and federal law by selling unregistered securities and by making other material misrepresentations and omissions, they filed a complaint against the two companies and their officers. They did not stop there. They also sued Hunter Durham, the lawyer who represented Heartland and Mammoth in connection with the issuance and sale of the securities. Durham drafted the documents necessary for the deals, including joint-venture agreements and private placement memoranda that provided details about the investment opportunity. He also told the prospective investors he was available to answer their questions. All the while, Bennett and Clayton allege, Durham knew the documents contained material

misrepresentations and omissions and that the securities were neither registered nor exempt from registration.

Durham responded that he merely provided traditional legal services in connection with the issuance and sale of the securities, work that the offer-and-sale provisions of the Kentucky securities laws by themselves do not regulate. In Bennett's lawsuit, the district court granted Durham's motion to dismiss the claim under Civil Rule 12(b)(6). In Clayton's lawsuit, the district court (through a different judge) granted Durham's motions for summary judgment under Civil Rule 56.

## II.

Kentucky, like most States, regulates sales and offers of securities through "blue sky" laws, so named because they initially targeted swindlers so brazen and so shameless they would peddle shares of anything, including (allegedly) shares of the sky. *See* Jonathan R. Macey & Geoffrey P. Miller, *Origin of the Blue Sky Laws*, 70 Tex. L. Rev. 347, 359–60 & n. 59 (1991). Kentucky's law says, as relevant here:

> (1) Any person, who *offers or sells a security* in violation of this chapter . . . or offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact . . . , and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission[,] is liable to the person buying the security from him. . . .
>
> (4) Every person who *directly or indirectly controls a seller or purchaser* liable under subsection (1) or (2) of this section, *every partner, officer, or director (or other person occupying a similar status or performing similar functions)* or employee of a seller or purchaser who materially aids in the sale or purchase, and every broker-dealer or *agent who materially aids in the sale or purchase* is also liable jointly and severally with and to the same extent as the seller or purchaser, unless [he] sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Ky. Rev. Stat. § 292.480 (emphases added). These provisions, along with the rest of Kentucky's blue-sky law, derive from the Uniform Securities Act of 1956, a model law authored by the National Conference of Commissioners on Uniform State Laws, a group

of state legislators, judges and legal scholars. Thirty-six other States have adopted the Act in whole or in part. *See* Jay H. Knight & Garrett P. Baker, *Kentucky Blue Sky Law: A Practitioner's Guide to Kentucky's Registrations and Exemptions*, 34 N. Ky. L. Rev. 485, 486 (2007); Joel Seligman, *The New Uniform Securities Act*, 81 Wash. U. L.Q. 243, 243 (2003). Both provisions, Bennett and Clayton maintain, cover Durham's conduct.

A.

Does an attorney who provides legal advice in connection with a securities transaction "offer[ ] or sell[ ] a security," as required to impose liability under subsection (1) of the statute? The customary meaning of the words suggests not, as Durham never offered to sell or sold shares to anyone. His clients sold the shares, and we do not attribute the transactions of a client to its attorney. An attorney may draft an offering memorandum for his client, but that does not mean the attorney, as opposed to the client, offers to sell the securities. The client and its broker-dealers sell the securities. Durham no more "offered" or "sold" these securities than the lawyer representing Magic Johnson's investment group recently "bought" the Los Angeles Dodgers. *See* Bill Shaikin, *Sale Stirs Hostility Before OK*, L.A. Times, Apr. 14, 2012, at C1.

Interpretations of the federal Securities Act of 1933 confirm the point. The federal Act likewise reaches "any person who offers or sells a security" in violation of its rules. 15 U.S.C. § 77*l*(a)(1). And the Court likewise has construed it to cover only "persons who pass title and persons who 'offer,' including those who 'solicit' offers." *Pinter v. Dahl*, 486 U.S. 622, 650 (1988) (quoting 15 U.S.C. § 77b(a)(3)). In rejecting a more expansive definition, *Pinter* reasoned that it "might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services," to liability, even though "[t]he buyer does not, in any meaningful sense, purchase the security from such a person." *Id.* at 651. Following *Pinter*'s lead, our court has taken a similar stance. "A non-owner cannot be a seller . . . unless he urges a prospective purchaser to buy. . . . It is not enough that the putative seller stands to benefit if the sale goes through; to be liable under a solicitation

theory, he must have engaged in actual solicitation." *Smith v. Am. Nat. Bank & Trust Co.*, 982 F.2d 936, 941 (6th Cir. 1992).

All of this matters not just because the Supreme Court and our court have interpreted "offer" and "sell" to rule out liability for attorneys performing traditional legal services in connection with a securities offering. What is particularly revealing is that Kentucky based its blue-sky law on the Uniform Securities Act, which itself "is borrowed substantially" from the same federal law (the Securities Act of 1933) construed in *Pinter* and *Smith*. Uniform Securities Act of 1956 § 401 cmt. subsec. j; *see also Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 471 (6th Cir. 2011) (noting that the Kentucky provision "mirror[s]" federal law); *compare* 15 U.S.C. §§ 77b(a)(3), 77l(a), *with* Ky. Rev. Stat. §§ 292.310(17), 292.480(1). There is no reason to think the Kentucky courts would construe the words differently. Since *Pinter*, moreover, other state courts have construed their own blue-sky laws the same way. *See, e.g.*, *Meyers v. Lott*, 993 P.2d 609, 613 (Idaho 2000); *Klein v. Oppenheimer & Co.*, 130 P.3d 569, 582 (Kan. 2006); *Wilson v. Misko*, 508 N.W.2d 238, 248 (Neb. 1993); *Biales v. Young*, 432 S.E.2d 482, 484–85 (S.C. 1993); *see also Allstate Indus. Loan Plan, Inc. v. Mihalek*, 555 S.W.2d 585, 586–87 (Ky. 1977) (relying on precedents from other States in construing the Kentucky Securities Act).

That is all well and good, Bennett and Clayton respond, but Durham was not just a lawyer doing his job. That would be a strong argument—if the facts backed it up. They do not. Bennett alleges and Clayton has put forth facts showing only that Durham drafted and distributed investment documents, made himself available to answer questions from prospective investors and represented clients in an enforcement proceeding. That is the type of ordinary legal work securities lawyers do every day.

Bennett and Clayton persist that Durham "went beyond a role of serving as counsel," R.37 (No. 11-5782) ¶ 31, and "was not merely an attorney and legal advisor," R.112 (No. 11-5918) ¶ 237. But they do not say how or when or otherwise elaborate on what that means. Even on summary judgment Clayton was able to identify only one plaintiff who spoke to Durham before investing, and the investor testified that Durham

answered his questions, not that Durham solicited or offered to sell any securities. One can go beyond the role of serving as counsel in all sorts of ways—providing informal business advice, helping find a printing firm to produce the investment prospectus—that do not implicate this provision. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"—in this instance, not even conclusory statements that create liability—"do not suffice" to survive Durham's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The only other specific factual allegations Bennett and Clayton make—that Durham served as an attorney to Heartland and Mammoth on many different occasions, that he knew the securities sales were illegal, and that Heartland's executives "relied completely" on his advice (Clayton Br. at 13)—change nothing. A lawyer does not become something other than a lawyer by serving the same client multiple times. Still less is that the case because the client follows his advice unquestioningly or because he knowingly drafts false or misleading documents. Of course, an attorney who knowingly drafted false or misleading documents would face *other* problems. He might be liable for fraud, a claim the district court declined to dismiss in Bennett's case but that the parties eventually stipulated to dismiss themselves. Or he might be liable for malpractice or face disciplinary proceedings. But none of this transforms the attorney into someone who "offers or sells a security" for purposes of Ky. Rev. Stat. § 292.480(1). Durham is not liable under this provision as a matter of law.

B.

Does Durham qualify (1) as a "partner, officer, or director (or other person occupying a similar status or performing similar functions)" or (2) as an "agent who materially aid[ed] in the sale or purchase" of securities? Ky. Rev. Stat. § 292.480(4).

The first part of this claim (raised by Clayton, not Bennett) takes little time. That Durham was a "partner, officer, or director" or occupied a similar status and performed similar functions fails for the same reason the last claim failed. Clayton offered no facts on summary judgment from which we could infer that Durham did anything beyond what would be expected of a securities attorney providing run-of-the-mine legal services.

Clayton's brief on appeal seeks to add more, but this effort is too little and too late. It is too little because the alleged facts mentioned in the appellate brief—that Heartland's officers and directors "relied completely" on Durham's work and would have "structured [their] sales operation in any way Mr. Durham advised," Br. at 32—suggest only that Heartland's *actual* partners, officers and directors relied heavily on their attorney, not that Durham was the one calling the shots. *Cf. Receiver of Assets of Mid-America Energy, Inc. v. Coffman*, 719 F. Supp. 2d 884, 893 & n.4 (M.D. Tenn. 2010). It is too late because appellate briefs may not supplement the record below. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1012 (6th Cir. 2003).

The second part of the claim is also flawed. The statute defines the key term—agent—as "any individual other than a broker-dealer who represents a broker-dealer or issuer in *effecting* or *attempting to effect* purchases or sales of securities." Ky. Rev. Stat. § 292.310(1) (emphasis added).

An attorney does not "effect," as opposed to "affect," purchases or sales of securities. "Effect" in this context means "to carry out (a sale, a purchase)," or more generally "to bring about (an event, a result)." Oxford English Dictionary (3d ed. 2008). That language covers salesmen or placement agents who identify potential investors on behalf of the issuer and convince them to buy securities. An attorney performing ordinary legal work, by contrast, is not hired to "carry out" or "bring about" the sale of securities; the attorney's job is to ensure that any such sale, should the client choose to pursue it, complies with the law. The attorney's work, it is true, may be a but-for cause of a later sale of securities, but the statute requires more. It is not enough that the attorney "represents" the issuer in a matter that culminates in the sale of securities; he must represent the issuer "in effecting or attempting to effect" the sale, meaning that carrying out or bringing about the sale must be the job the client hires the attorney to perform. That is not what securities lawyers generally do, and that was not what Durham did even under a view of the evidence most favorable to the plaintiffs.

Case law confirms this reading. In a survey of a half-dozen cases considering the same question, the Maryland Court of Special Appeals noted that the cases "each have

one thing in common: they do not impose liability upon an attorney who merely provides legal services or prepares documents for his or her client." *Baker, Watts & Co. v. Miles & Stockbridge*, 620 A.2d 356, 368 (Md. Ct. Spec. App. 1993), *superseded on other grounds by rule*, *see Benway v. Md. Port Admin.*, 989 A.2d 1239, 1245 (Md. Ct. Spec. App. 2010); *see also Ackerman v. Schwartz*, 733 F. Supp. 1231, 1252 (N.D. Ind. 1989), *aff'd in part and rev'd in part on other grounds*, 947 F.2d 841 (7th Cir. 1991); *Excalibur Oil, Inc. v. Sullivan*, 616 F. Supp. 458, 467 (N.D. Ill. 1985); *In re N. Am. Acceptance Corp. Sec. Cases*, 513 F. Supp. 608, 623 (N.D. Ga. 1981); *Adams v. Am. W. Sec., Inc.*, 510 P.2d 838, 844 (Or. 1973); *Rendler v. Markos*, 453 N.W.2d 202, 206 (Wis. Ct. App. 1990). To be liable, "the attorney must do something more than act as legal counsel," namely "actively assist in offering securities for sale, solicit offers to buy, or actually perform the sale." *Baker*, 620 A.2d at 368. Later cases go the same way. *See, e.g.*, *Klein v. Boyd*, 949 F. Supp. 280, 284 (E.D. Pa. 1996); *CFT Seaside Investment Ltd. P'ship v. Hammet*, 868 F. Supp. 836, 844 (D.S.C. 1994); *Johnson v. Colip*, 658 N.E.2d 575, 578 (Ind. 1995); *Ward v. Bullis*, 748 N.W.2d 397, 405 (N.D. 2008).

For their part, Bennett and Clayton cite no case holding an attorney liable under the Uniform Securities Act merely for drafting documents, providing advice and answering client questions. The cited cases apply a state law that defines agency more broadly than the Act does, *see Felts v. Nat'l Account Sys. Ass'n*, 469 F. Supp. 54, 67–68 (N.D. Miss. 1978); *see also Powell v. H.E.F. P'ship*, 835 F. Supp. 762, 765 (D. Vt. 1993), do not involve attorneys or the agency prong of the Act, *see Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1326 (8th Cir. 1991), or involve attorneys who, unlike Durham, sold securities and operated the company in question, *see In re Prof'l Fin. Mgmt., Ltd.*, 692 F. Supp. 1057, 1059 & n.2, 1065 (D. Minn. 1988).

Bennett and Clayton, along with the Kentucky Department of Financial Institutions as an amicus curiae, also rely on *Senior Healthcare Ins. & Fin. Servs. v. Clementi*, No. 2006-CA-001348-MR, 2007 WL 1784158 (Ky. Ct. App. June 8, 2007). But *Clementi* is a two-page unpublished intermediate appellate court opinion involving different facts: a non-lawyer defendant who "introduced [the salesman] to the fraudulent

securities and encouraged him to sell them." *Id.* at \*1. The one shard Bennett and Clayton extract in isolation from the opinion—that "any person who facilitates another person's securities fraud" is liable under Kentucky law, *id.*—is dicta and, if taken literally, is at odds with the terms of the statute, which imposes liability not on "any person" facilitating fraud but only on any "*broker-dealer or agent* who materially aids in the sale or purchase" of securities. Ky. Rev. Stat. § 292.480(4) (emphasis added).

Legal scholars also agree with our approach. Under the Uniform Securities Act's definition, they say that "the term 'agent' means only individuals who help to sell securities," meaning that "professionals such as attorneys and accountants[ ] would not qualify as agents under this definition unless they became involved in the sales efforts." Jennifer J. Johnson, *Secondary Liability for Securities Fraud: Gatekeepers in State Court*, 36 Del. J. Corp. L. 463, 482–83 (2011); *see also* Douglas M. Branson, *Chasing the Rogue Professional After the Private Securities Litigation Reform Act of 1995*, 50 SMU L. Rev. 91, 120 (1996); Seligman, *supra*, 81 Wash. U. L.Q. at 253 n.21; Marc I. Steinberg & Chris Claassen, *Attorney Liability Under the State Securities Laws: Landscapes and Minefields*, 3 Berkeley Bus. L.J. 1, 23 (2005) ("prevailing view" is that attorneys are not agents under the Uniform Securities Act because they "do[ ] not 'effect' the purchase or sale" of securities).

An attorney who performs ordinary legal work, such as drafting documents, giving advice and answering client questions, is not an "agent" under Ky. Rev. Stat. § 292.480(4). Even if we accept all of the facts alleged in the complaint, that is all Durham did.

### III.

Bennett and Clayton alternatively ask us to certify these questions to the Kentucky Supreme Court. We decline the invitation. Bennett and Clayton filed their claims in federal court, not state court, and did not seek certification until after the district court ruled against them. The parties have already endured multiple rounds of briefing and argument in federal court. And the authorities cited above suffice "to allow

us to make a clear and principled decision." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009).

IV.

For these reasons, we affirm.